Cesar BATISTA, Petitioner,

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

**No. 00–2525.**

United States Court of Appeals, First Circuit.

Heard Aug. 2, 2001.

Decided Oct. 29, 2001.

John H. Ruginski, Jr. for petitioner.

Thankful Vanderstar, with whom Stuart E. Schiffer, Acting Assistant Attorney General, Terri J. Scadron, Senior Litigation Counsel, and Brenda M. O'Malley, Trial Attorney, United States Department of Justice, were on brief, for respondent.

Before BOUDIN, Chief Judge, and SELYA and LIPEZ, Circuit Judges.

LIPEZ, Circuit Judge.

Cesar Batista–Baez ("Batista" or "Cesar Batista") petitions for review of a reinstated final order of removal by the Immigration and Naturalization Service ("INS"). Although Batista concedes that he is removable based on a drug trafficking conviction, he contends that he is entitled to relief from removal because his father, a naturalized citizen, was his custodial parent, and hence he is a derived United States citizen. We find that there is a genuine issue of material fact regarding

Cesar Batista's nationality and transfer this case to the district court for a new hearing on the matter.

## I.

The following facts are not disputed. Cesar Batista was born in the Dominican Republic on September 14, 1977. On October 21, 1983, at the age of six, he was admitted as an immigrant to the United States, where his parents then lived. On May 5, 1997, Batista was convicted in Rhode Island for manufacturing and delivering heroin, an "aggravated felony" under current immigration law. *See* 8 U.S.C. § 1101(a)(43)(B). On July 14, 1997, the INS instituted removal proceedings against Batista based on this aggravated felony conviction. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1227(a)(2)(B)(i).[1]

On August 13, 1997, Batista admitted the charges and conceded that he was removable. In September 1997, Batista filed a motion to terminate removal proceedings, claiming that he was a United States citizen. Batista said that his father, Julio Batista, became a naturalized United States citizen on June 16, 1982, that he himself became a legal permanent United States resident in October 1983 at the age of six, and that his parents legally separated on January 12, 1982. In support of his motion to terminate, Batista submitted an opinion from a lawyer in the Dominican Republic on the obligations of parents under the country's divorce laws, a copy of his father's naturalization certificate, and a copy of his mother's application for naturalization. However, Julio Batista's naturalization certificate, dated June 16, 1982,

indicates his marital status as "married", not separated, and similarly, Minerva Batista's naturalization application, dated February 25, 1997, also lists her marital status as "married."

Batista also submitted a copy and a translation of a Dominican marriage certificate stating that his parents were married on August 13, 1977, and a copy and a translation of a document captioned "Dominican Republic Certification." This document contains Minerva Batista's declaration that she is "separated from" her "legitimate husband," Julio Batista, and that "at the moment of separation," she "gave the custody of [her] son, CESAR ARMANDO BATISTA, to his legitimate father, JULIO CESAR BATISTA PATRICIO." The document states that "[t]he present declaration is made under oath.... In the City of San Domingo, National District, Capital of the Dominican Republic, at 12 days of the month of January, 1982." The certification itself is dated August 3, 1997, and the translation is dated August 29, 1997.

On November 12, 1997, an immigration judge denied Batista's motion to terminate removal, found him removable based on his drug trafficking conviction, and ordered that Batista be removed to the Dominican Republic. Batista did not appeal the immigration judge's decision to the Board of Immigration Appeals ("BIA"). On November 26, 1997, the INS deported Batista to the Dominican Republic.

Batista subsequently reentered the United States. The INS apprehended and detained him on October 15, 1998, in Philadelphia, Pennsylvania, and served him with a notice of intent to reinstate the 1997

---

1. These provisions state in relevant part that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii)(1999), and that "[a]ny alien who at any time after admission has been convicted of a violation of ... any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is deportable." 8 U.S.C. § 1227(a)(2)(B)(i)(1999).

removal order.[2] Batista declined to make a statement contesting the reinstatement. On October 16, 1998, the INS reinstated the 1997 removal order pursuant to 8 U.S.C. § 1231(a)(5).[3]

On April 8, 1999, Batista applied for citizenship to the INS District Director in Philadelphia, claiming that he had derived citizenship through his father under 8 U.S.C. § 1432(a). The statute provides, *inter alia,* that a child of alien parents born outside the United States may become a citizen of the United States if "the parent having legal custody of the child when there has been a legal separation of the parents" is naturalized; "[s]uch naturalization takes place while such child is under the age of eighteen years;" and "[s]uch child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years." 8 U.S.C. § 1432. In his citizenship application Batista did not supplement the evidence that he presented in support of his earlier motion to terminate removal.

On April 12, 1999, the INS Acting Director in Philadelphia denied Batista's application. The Director said that Batista presented no evidence in support of his claim that his parents "obtained a divorce or a legal separation" and noted (presumably to undermine such claim) that his father's 1982 naturalization certificate and his mother's 1997 naturalization application indicated that each was married, and that his mother's 1997 naturalization application additionally identified her husband as Julio C. Batista.

Although the Director considered the document containing a declaration by Batista's mother that his father secured legal custody of Batista upon their separation, he noted that the document was certified August 3, 1997, and further said that "[t]estimony presented to a notary public and certified in public record does not in itself constitute a legal determination on separation, divorce, and custody of minor children." The Director found that the available evidence did not show that Batista's parents obtained a legal separation, or that his father took legal custody of him before he reached the age of eighteen, as required by § 1432(a).

Batista did not appeal the denial of his citizenship claim to the Administrative Appeals Unit of the INS. On May 13, 1999, he was removed from the United States for the second time. Batista again reentered the United States, and on August 26, 2000, the Rhode Island state police arrested him for driving a car with a counterfeit inspection sticker. On August 30, 2000, the INS served Batista with a notice of intent to reinstate the 1997 removal order. Batista declined to make a statement contesting the reinstatement determination. The INS ordered Batista removed.

On September 25, 2000, Batista filed a habeas petition in the United States District Court for the District of Rhode Island challenging reinstatement of the 1997 removal order on the ground that he was a derived citizen under § 1432. Batista submitted no documents in support of his petition in addition to those already in the

---

**2.** The government indicted Batista on charges of illegal entry, but later dropped them.

**3.** This provision states: "If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed . . . and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5).

administrative record. On November 21, 2000, the district court transferred Batista's petition to this court pursuant to 28 U.S.C. § 1631.

Before us, Batista continues to argue that he is a derived United States citizen under § 1432 because his father became a naturalized citizen before Batista was eighteen and took sole legal custody of him after his parents' divorce. In support of his citizenship claim, Batista submitted to us two documents that were not part of the administrative record upon which the 1997 removal order is based: a Dominican "Divorce Sentence" document and an affidavit from his father. In resolving this appeal, we must decide whether we can consider these two documents.

## II.

### A. *Jurisdiction*

■ Although Congress recently restricted our authority to review removal orders based on an alien's aggravated felony conviction, *see* 8 U.S.C. § 1252(a)(2)(C) (Supp. II 1996), those restrictions do not apply when the alien makes a claim of citizenship. *Fierro v. Reno*, 217 F.3d 1, 3 (1st Cir.2000). As the government concedes, when a citizenship claim has been made, we have jurisdiction, pursuant to 8 U.S.C. § 1252(b)(5)(A) and (B) (Supp. II 1996), to determine whether there is a "genuine issue of material fact" as to the citizenship claim requiring transfer to the district court for necessary fact finding.

■ The same statutory scheme provides that an alien seeking judicial review of a reinstated removal order must file a petition for review in this court within 30 days of the date of the reinstatement of the removal order. *See* 8 U.S.C. § 1252(b)(1). Rather than following this procedure, however, Batista filed a habeas petition with the district court within the

permitted 30–day time period. The district court then transferred the petition to us pursuant to 28 U.S.C. § 1631, which provides that when a civil action is filed in a court "and that court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." Because Batista filed his habeas petition with the district court within the time permitted for filing a petition for review of the removal order in this court, the district court's transfer of Batista's petition to us under § 1631 was proper.

### B. *Genuine Issue of Material Fact*

#### 1. *The basis for the determination*

As noted, Batista submitted to us two documents in support of his nationality claim that were not part of the administrative record: Julio Batista's affidavit and the "Divorce Sentence" document. In deciding whether we are authorized to look outside the administrative record in our threshold task of identifying a "genuine issue of material fact" as to Batista's citizenship claim, we start with the text of the statute, which provides in relevant part:

(4) Scope and standard for review

*Except as provided in paragraph 5(B)—*

(A) *the court of appeals shall decide the petition only on the administrative record on which the order of removal is based,*

(B) the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]

.        .        .        .        .

(5) Treatment of nationality claims

(A) Court determination if no issue of fact

> If the petitioner claims to be a national of the United States and *the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented,* the court shall decide the nationality claim.
>
> (B) Transfer if issue of fact
>
> If the petitioner claims to be a national of the United States and *the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented,* the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim....

8 U.S.C. §§ 1252(b)(4) & (5) (emphasis added).

Pursuant to this scheme, when an alien challenges an INS removal order on grounds other than a claim of citizenship, we are limited in our review to the "administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). However, when an alien claims citizenship in the petition for review, we are required to determine on the basis of the "pleadings and affidavits" whether there is a genuine issue of material fact sufficient to transfer the case to the district court for a new hearing and decision. *See* 8 U.S.C. § 1252(b)(5).[4] The statute does not limit that threshold inquiry to the administrative record.

This approach is not surprising, given the designed kinship between § 1252(b)(5) and Fed.R.Civ.P. 56, as noted by the Supreme Court in *Agosto v. INS,* 436 U.S. 748, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978). There, the Court reviewed a petitioner's claim of nationality under 8 U.S.C. § 1105a(a) (1976)(repealed 1996), which—like the current § 1432—required the court of appeals to determine from the pleadings and affidavits filed by the parties whether "a genuine issue of material fact about the petitioner's nationality is presented." *Agosto,* 436 U.S. at 751, 98 S.Ct. 2081 (quoting 8 U.S.C. § 1105a(a)(5)(B)). The Court said that the statutory language was "virtually identical" to the language in Federal Rule of Civil Procedure 56, which governs motions for summary judgment, and concluded: "We may reasonably assume that, in using the language from Rule 56 as the standard for granting *de novo* district court hearings on citizenship claims, Congress intended the language to be interpreted similarly to that in Rule 56." *Id.* at 754, 98 S.Ct. 2081. We also think it is reasonable to assume that Congress intended that this language, conspicuously different than the "only on the administrative record" language of § 1252(b)(4), embraces a familiar feature of summary judgment practice. In Rule 56 proceedings, parties can submit affidavits that are not based on an existing record for the purpose of demonstrating that a genuine issue of material fact exists requiring resolution by a fact-finder. *See, e.g., Judge Young on Crucial Elements of Pre–Trial Practice* at 179 (MCLE 2000)(advising parties moving for summary judgment to "assess whether third parties will voluntarily provide the affidavits necessary for a dispositive motion or, instead, whether a deposition or documents subpoena will be required"). *See also* Jack H. Friedenthal et al., *Civil Procedure* § 9.2 at 440 (2d ed.1993) (noting courts' preference for written affidavits in

4. While § 1252(b)(5)(A) explicitly refers to "pleadings and affidavits", § 1252(b)(5)(B) does not use that phrase. Nevertheless, common sense dictates that we read § 1252(b)(5)(A)'s "pleadings and affidavits" into § 1252(b)(5)(B) as an implied term.

14

place of oral testimony for Rule 56 purposes).

■ In reviewing the "pleadings and affidavits" for material facts in dispute sufficient to warrant an evidentiary hearing, we find ourselves in an unusual role, analogous to that of a trial court presented with a Rule 56 motion for summary judgment. The Supreme Court has stated that "a court of appeals cannot refuse to allow a *de novo* review of a citizenship claim if the evidence presented in support of the claim would be sufficient to entitle a litigant to trial were such evidence presented in opposition to a motion for summary judgment." *Agosto,* 436 U.S. at 756, 98 S.Ct. 2081. Given this unusual function and the statutory language, we deem it appropriate under § 1252(b)(5) to look for a genuine issue of material fact as to citizenship in the "pleadings and affidavits" without regard to whether such materials are part of the administrative record.

Case law supports this determination. In a case directly on point, *Pignatello v. Attorney General of the United States,* 350 F.2d 719, 723–24 (2d Cir.1965), the Second Circuit transferred the proceedings to the district court when evidence outside the administrative record presented a genuine issue of material fact as to petitioner's nationality claim. Specifically, the Second Circuit considered in its material-fact-issue

inquiry 1) an affidavit submitted by petitioner from the leader of his military company, 2) an unexecuted naturalization application found in petitioner's army record, and 3) a certificate from an INS official attesting to the absence of any record of petitioner's naturalization—none of which were part of the administrative record. *Id.* at 724. *See also Nguyen v. INS,* 208 F.3d 528, 532 (5th Cir.2000), *aff'd* 533 U.S. 53, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) (considering parentage court order arguably not part of administrative record to determine no fact issue existed regarding citizenship and noting that "the statute does not require that the BIA or immigration judge have heard this evidence").

"[T]he right in question—American citizenship—is one of the most precious imaginable." *Alexander v. INS,* 74 F.3d 367, 370 (1st Cir.1996). Recognizing this fact, Congress provided extra Article III procedural protections to safeguard the right to citizenship in removal proceedings by affording in § 1252(b)(5)(B) a hearing before the district court when a genuine issue of material fact exists as to citizenship. Therefore, we will consider whether the "Divorce Sentence" document [5] and Julio Batista's affidavit, together with the documents in the administrative record, present a genuine issue of material fact as to his nationality claim.[6]

5. We treat the "Divorce Sentence" document as a purported "affidavit" from the Dominican Republic government official in custody of the actual divorce decree and therefore within the scope of § 1252(b)(5)'s "pleadings and affidavits."

6. Pending before us is a motion by Batista to supplement his initial submissions to this court with 1) a double-sided copy of the Dominican "Divorce Sentence" document, and 2) another English translation of that document and its accompanying seals. The double-sided copy of the divorce document appears to contain various signatures and

official seals on its back side which did not appear on the one-sided copy originally submitted as an addendum to Batista's brief. Batista's counsel explained at oral argument that he submitted the double-sided copy containing the official seals and signatures (with its accompanying translation) in response to the challenge made in the government's opposition brief to the authenticity of the document. We grant Batista's motion to supplement and note that any reference in this opinion to the "Divorce Sentence" document shall refer to the double-sided copy and accompanying translations.

■ We add, however, an important caveat. Our decision to consider the documents at issue here does not mean that a respondent at a deportation proceeding involving a claim of citizenship has an automatic right to have new evidence considered on appeal, regardless of the reason for failure to proffer it earlier. The statute merely indicates that such evidence may be considered. It does nothing to alter the longstanding policy that reasonably available evidence should be submitted at the initial stage of any proceeding so that it can be tested in an evidentiary forum and unnecessary remands or references avoided. *See generally INS v. Abudu,* 485 U.S. 94, 106–08, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).

We have no reason in this case to pursue any question of default because the government has not developed such an argument and we have no way of knowing when the evidence became available and whether it was submitted as promptly as possible. However, other petitioners would be well advised to present such evidence in the first instance in the administrative proceeding or, if they fail to do so, to explain in their submission containing new evidence at the court of appeals stage why such evidence was not originally produced.

### 2. The documents

■ An alien may acquire citizenship by birth "only as provided by Acts of Congress." *Miller v. Albright,* 523 U.S. 420, 424, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998). Here, petitioner's nationality claim is based on 8 U.S.C. § 1432.[7] Cesar Batista can avail himself of derived citizenship

under this statute by demonstrating 1) that Julio Batista became a naturalized United States citizen before his son Cesar Batista reached the age of eighteen; 2) that Cesar Batista resided in the United States pursuant to a lawful admission for permanent residence when his father was naturalized, or began to reside here permanently before reaching the age of eighteen; and 3)—the critical element for this petition—that Cesar Batista's parents legally separated and that Julio Batista was awarded legal custody of his son. *See* 8 U.S.C. § 1432(a). Batista offered several pieces of evidence relevant to these issues: Julio Batista's 1982 naturalization certificate, Minerva Batista's declaration and 1997 naturalization application, the Batista parents' marriage certificate, and Cesar Batista's birth certificate. In addition, there are the two documents that were not part of the administrative record: Julio Batista's affidavit and the "Divorce Sentence" document.

The "Divorce Sentence" document, which is dated June 6, 1999, contains a declaration from a Dominican Republic government official that he has custody of a registered divorce document which states that Batista's parents divorced on November 14, 1988, and that custody of Batista was granted to his father. In his affidavit, Julio Batista states the following facts: 1) he came to the United States as a legal permanent resident on July 4, 1973 and married Minerva Batista on August 13, 1977 in the Dominican Republic; 2) after Cesar Batista was born in September 1977, the child and his mother lived in the Dominican Republic until December 1978; 3) at that time, Minerva Batista came to the United States as a permanent resident

---

7. Section 1432 was repealed effective February 27, 2001, by the Child Citizenship Act of 2000, Pub.L. No. 106–395, 114 Stat. 1631 (2000). However, the repeal does not affect the issue before this court, namely, whether

Batista automatically acquired citizenship under § 1432 before reaching the age of 18 (which occurred in 1995, well before the enactment of the Child Citizenship Act).

alien; 4) in June 1982, Julio Batista became a naturalized United States citizen; 5) in October 1983, his son, Cesar Batista, came to the United States; 6) Julio and Minerva Batista divorced on November 14, 1988, in the Dominican Republic, and the father was awarded sole legal custody of his son pursuant to the divorce decree; 7) after the divorce, Julio Batista married Yoanny M. Brea, whom he divorced in May 1990; and 8) on July 6, 1990, he remarried Minerva Batista in New York City.

Setting aside for a moment the government's argument that the "Divorce Sentence" document has been improperly authenticated, we consider whether the evidence put forth by Batista presents a genuine issue of material fact about any of the elements needed to prove derived citizenship under § 1432. Julio Batista's naturalization certificate, dated June 16, 1982, indicates that he became a naturalized citizen before his son reached the age of eighteen. The government does not contend otherwise, nor does it dispute that Cesar Batista was admitted as a legal permanent resident at the age of six. The remaining question is whether the evidence submitted by petitioner—in particular, Julio Batista's affidavit and the Dominican "Divorce Sentence"—present a genuine issue of material fact as to whether Cesar Batista's parents legally separated and whether his father was awarded sole custody of him prior to Batista's eighteenth birthday.

In *Agosto,* the petitioner's evidence of citizenship consisted of his own testimony and that of his adoptive parents and alleged half-brother. 436 U.S. at 758, 98 S.Ct. 2081. The Court found that this evidence, taken as true, would refute the INS's documentary evidence weighing against citizenship, and that therefore "there [was] plainly a genuine issue of

material fact for the District Court on the question of petitioner's citizenship." *Id.* at 761, 98 S.Ct. 2081.

Applying *Agosto*'s standards here, we conclude that the evidence presented by Batista, taken as true, plainly raises a genuine issue of material fact about his nationality claim. The Divorce Sentence and Julio Batista's affidavit both state that Batista's parents were divorced on November 14, 1988, when Batista was eleven years old, and that his father was awarded legal custody of him.

The government seems to claim that the fact that Minerva Batista's 1997 naturalization application lists her marital status as "married" and names Julio Batista as her spouse is inconsistent with Batista's claim that his parents were legally separated or divorced in 1988. However, Julio Batista's affidavit states that he and Minerva Batista remarried on July 6, 1990, which could explain why she listed her marital status as "married" and named Julio Batista as her spouse in her 1997 naturalization application. In all events, whatever doubt Minerva Batista's naturalization application casts on Cesar Batista's claim, the petitioner's burden here is not to prove the facts conclusively, but merely to show that a genuine issue of material fact exists.

Therefore, without ruling on the authenticity of the document in question, we find that Batista's father's affidavit and the "Divorce Sentence" document present a genuine issue of material fact as to Batista's citizenship claim.

## C. *Authentication*

The government argues that the "Divorce Sentence" document submitted by Batista is inadmissible because it was not properly authenticated, and hence his appeal should fail. Under the strictures of Rule 56, courts often refuse to consider for summary judgment purposes unauthenti-

cated documents or other evidence inadmissible at trial. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2738 at 344 (3d ed.1998). We recognize, however, that the Rule 56 analogy is not a perfect one, given the limited factfinding capabilities of an appellate court. We note that the signatures and official seals on the back of the double-sided "Divorce Sentence" document submitted to us on appeal purportedly authenticate the document. All in all, we are in a poor position to decide such a claim.

By contrast, transfer of this issue to the district court will afford Batista a full opportunity to demonstrate the authenticity of the "Divorce Sentence" document, or alternatively, to show "good cause" why Fed.R.Civ.P. 44(a)(2) cannot be satisfied.[8] Furthermore, the government will be able to investigate properly the accuracy and authenticity of the "Divorce Sentence" document and introduce other evidence into the record for the district court's consideration. In light of the particular care with which citizenship claims are addressed, *see, e.g.,* 8 U.S.C. § 1252(b)(5), we believe it is important that the parties have a full opportunity to be heard on the authentication issue. Accordingly, under the unusual circumstances here, we deem it appropriate to leave the authentication determination to the district court. This is especially appropriate since Julio Batista's affidavit, in and of itself, raises the requisite issue of material fact.

### III.

For the reasons stated above, we transfer this proceeding to the district court for

a hearing and decision on the nationality claim consistent with this opinion and pursuant to 8 U.S.C. § 1252(b)(5)(B).

*So ordered.*

---

8. We have stated that Rule 44(a)(2) provides an "appropriate vehicle" for putting foreign official documents in civil proceedings before Article III courts. *United States v. Rodriguez Serrate,* 534 F.2d 7, 9–10 (1st Cir.1976). This rule permits "a court for 'good cause shown' to admit attested copies without final certification in recognition of the fact that 'in some situations it may be difficult ... to satisfy the basic requirements of the rule....'" *Id.* at 10 (quoting Advisory Committee's Note to Rule 44).