Felix Rafael MARTINEZ–PIEDRAS, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 04CV1527–DMS(BLM).

United States District Court, S.D. California.

Jan. 25, 2005.

Felix Rafael Martinez–Piedras, San Diego, CA, pro se.

U.S. Attorneys Office, Southern District of California Civil Division, San Diego, CA, for Respondent.

## ORDER TRANSFERRING PETITION TO NINTH CIRCUIT COURT OF APPEALS

SABRAW, District Judge.

On July 29, 2004, Petitioner Felix Rafael Martinez–Piedras, a detainee in the custody of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("BICE"), proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. On October 8, 2004, Petitioner supplemented the petition with an affidavit. Respondent issued its return to the petition on November 19, 2004. On December 22, 2004, Petitioner submitted a traverse.[1] The Court took this matter under submission without oral argument, pursuant to Civ. L.R. 7.1(d)(1). For the reasons discussed below, the Court TRANSFERS the petition to the Ninth Circuit Court of Appeals.

### I.

### BACKGROUND

According to Respondent, Petitioner is a native citizen of Mexico, born May 9, 1961. On March 3, 1983, immigration officials apprehended Petitioner when he sought admission to the United States, via an oral claim of United States citizenship, at the El Paso (Texas) Port of Entry. Petitioner told authorities he was born in Robstown, Texas, on May 9, 1962, making him a United States citizen by birth. An immigration investigator then gave Petitioner

an I–214 form, which Petitioner signed. On March 8, 1983, immigration officials issued Petitioner a Notice to Appear before an Immigration Judge ("IJ"), to determine whether Petitioner was admissible to the United States under applicable immigration laws. Petitioner evidently failed to appear at this hearing, set for March 23, 1983. More than one month later (April 29, 1983), Petitioner's counsel filed a motion to withdraw, because Petitioner was no longer living in the United States (he was living in Mexico City, Mexico). Some time later,[2] the IJ administratively closed Petitioner's case because of Petitioner's failure to appear.

Respondent avers that Petitioner had no further contact with immigration officials until December 8, 2003, when he again applied for admission to the United States at the San Ysidro (California) Port of Entry, and claimed to be a United States citizen by birth. During Petitioner's preliminary examination, immigration officials checked the National Crime Information Center ("NCIC") system, which revealed a wanted person alert. Subsequent database checks showed an unverified claim of United States citizenship in the name of Felix Martinez–Piedras. Petitioner was thus issued a detainer to determine his true alienage at a later date. On February 18, 2004, Petitioner gave a voluntary sworn statement to an immigration official,

---

**1.** Petitioner's December 22, 2004 submission was actually titled "request to amend and supplement the traverse." In that document, Petitioner refers to his "five pages [sic] document of traversing I submitted by fax to the clerk's office on December 8, 2004." However, to date, no "traverse" has been filed in this Court. Moreover, had Petitioner attempted to file documents by faxing them to the Clerk's office, such documents would have been rejected. Civ. L.R. 5.3(a) provides that "NO DOCUMENTS MAY BE SUBMITTED DIRECTLY TO THE CLERK BY FAX FOR FIL-

ING. ANY DOCUMENTS SO TRANSMITTED SHALL BE REJECTED AND NOT FILED." Accordingly, the Court shall refer to the December 22, 2004 document as Petitioner's "traverse."

**2.** Because the copy of the document submitted by Respondent is unclear, the Court is unable to decipher when the IJ filed his administrative closure of Petitioner's case. It appears that this occurred some time in 1985. (Return, Ex. 7.)

claiming that his date of birth was May 9, 1961.

Immigration officials issued a Notice to Appear on February 18, 2004, informing Petitioner of the INS's allegations that: (1) Petitioner was not a citizen or national of the United States; (2) Petitioner was a citizen and native of Mexico; (3) on December 8, 2003, Petitioner applied for admission into the United States from Mexico, falsely claiming to be a United States citizen; (4) at the time of Petitioner's application for admission, the Los Angeles Police Department arrested Petitioner and took him into custody for an outstanding arrest warrant, issued on July 9, 2002; (5) the Los Angeles Police Department arrested Petitioner on May 28, 2002, for a violation of the California Health and Safety Code (possession of a controlled substance); and (6) on February 18, 2004, Petitioner voluntarily admitted to using cocaine.

Meanwhile, on July 29, 2004, Petitioner filed the underlying Section 2241 petition in this Court. In his petition, Petitioner claims that: (1) he is a United States Citizen by birth; (2) the Immigration and Naturalization Act ("INA") does not apply to United States citizens by birth; (3) he was detained to be removed from the United States under Section 240 of the INA; (4) he presented a United States birth certificate to immigration officials in the 1983 proceeding and the 2004 proceeding; (5) immigration officials took the United States birth certificate from Petitioner in 2004; and (6) immigration officials blocked Texas Bureau of Vital Statistics officials from issuing Petitioner a copy of his United States birth certificate.

On August 20, 2004, Petitioner made his pretrial appearance before the immigration court. Petitioner admitted the Government's allegations regarding his drug-related arrests and cocaine use; he denied the remaining allegations concerning citizenship. At that time, the IJ informed Petitioner that all witnesses and documentary evidence supporting his claim to United States citizenship could be presented at his final hearing for removal, set for November 3, 2004. At the conclusion of the final hearing on November 3, 2004, the IJ ordered Petitioner's removal from the United States. All parties waived their right to appeal. Pursuant to the IJ's order, immigration officials removed Petitioner to Mexico on November 4, 2004.

## II.

### DISCUSSION

Petitioner argues he is a United States citizen who was wrongly deported from this country to Mexico. Respondent attacks the petition in two ways, both of which focus on this Court's jurisdiction to consider the merits of the petition. First, Respondent argues the case has been mooted by Petitioner's removal to Mexico. Second, Respondent contends that under the immigration laws of the United States, exclusive jurisdiction over Petitioner's claims lies in the United States courts of appeals. This Court agrees with Respondent's second contention. However, as discussed below, rather than simply dismiss the petition for want of jurisdiction, the Court opts to transfer the petition to the proper court (the Ninth Circuit Court of Appeals).

### A.  *Mootness*

█ Petitioner currently resides in Mexico City, Mexico. Accordingly, he is no longer technically "in custody." For this reason, Respondent maintains the petition should be dismissed as moot, because Section 2241's jurisdictional requirement—that a prisoner be "in custody" in violation of federal law—cannot be satisfied. (Return at 3.) Nonetheless, the Court must determine the exact sequence

of events to resolve this mootness inquiry. For instance, if the petition was filed *after* removal, the petition may be moot. *See Miranda v. Reno,* 238 F.3d 1156, 1158–59 (9th Cir.2001) ("Immigrants who have already been removed ... do not satisfy the 'in custody' requirement of habeas corpus jurisdiction."). *But see Subias v. Meese,* 835 F.2d 1288, 1289 (9th Cir.1987) (petitioner who is outside the United States but prohibited from entering this country may bring a Section 2241 habeas petition; "in custody" requirement interpreted broadly to include restriction from entering United States). However, if the petition was filed *before* removal, this court does not lose jurisdiction simply because a petitioner is subsequently removed. This is because a court's jurisdiction is determined at the time the petition is field, not at some later date. *See Zegarra–Gomez v. INS,* 314 F.3d 1124, 1127 (9th Cir.2003) ("the case or controversy requirement is satisfied where the petitioner is deported, so long as he was in custody when the habeas petition was filed and continues to suffer actual collateral consequences of his removal.").

When he filed his petition (July 29, 2004), Petitioner had not yet been deported. (See Return at 3 ("Petitioner was removed to Mexico on November 4, 2004.").) Thus, the petition was not mooted by Petitioner's subsequent removal from this country. *See Zegarra–Gomez,* 314 F.3d at 1127. *Accord Chong v. INS,* 264 F.3d 378, 383–84 (3rd Cir.2001); *Smith v. Ashcroft,* 295 F.3d 425, 428 (4th Cir. 2002). Petitioner suffers "collateral consequences" of his deportation because he is restricted from reentering the United States. *See Leitao v. Reno,* 311 F.3d 453, 456 (1st Cir.2002). Consequently, the Petition may not be dismissed as moot.

**B.** *Jurisdiction: Statutory Review vs. Habeas Review*

■ Respondent also urges the Court to dismiss the petition because it lacks statutory jurisdiction to consider Petitioner's claim of United States citizenship. Petitioner's underlying contention is that his United States citizenship prohibits his removal to Mexico. (*See* Petition at ¶¶ 2, 3; Affidavit at ¶ 2; Traverse at 2.) According to Petitioner, he was born in Texas in 1962, and the INA does not apply to United States citizens. (Petition at ¶¶ 2, 3.) Respondent insists that Petitioner's sole avenue for relief lies in 8 U.S.C. § 1252(b)(5), and Section 1252(b)(2) vests exclusive jurisdiction over such claims in the United States courts of appeals (not the district courts). *See Section* 1252(b)(2) ("The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.").

There is considerable overlap between the INA's direct judicial review provisions and federal habeas review in immigration cases. In 1996, Congress twice amended the judicial review provisions of the INA. The first time was in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"); the second time was in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"). The end result has been a complex and perplexing web of statutes and caselaw, which ultimately has restricted the scope of judicial review available to deported aliens. However, in 2001, the Supreme Court expressly held that neither AEDPA nor IIRAIRA repealed federal habeas corpus jurisdiction under 28 U.S.C. § 2241. *See INS v. St. Cyr,* 533 U.S. 289, 309–11, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). *See also* Gordon, Mailman & Yale–Loehr, *Immigration Law & Procedure* § 108.04[2][b], at 104–36 (Matthew Bender 2004) ("The immigration habeas corpus petition may be the only judicial check on the legality of the executive branch's deportation or removal decisions. Such review is

the core constitutional function of habeas corpus.") (citations omitted).

The interplay between the INA (as amended by AEDPA and IIRAIRA) and federal habeas review of immigration decisions has been (appropriately) termed a "Gordian Knot." [3] *See Baeta v. Sonchik,* 273 F.3d 1261, 1265 (9th Cir.2001). Federal district courts have entertained a wide variety of challenges to immigration actions within the context of a Section 2241 habeas petition. Several district courts have used the Section 2241 habeas petition to entertain the sort of challenge raised by Petitioner in this case: a review of whether the petitioner is a citizen or national of the United States. *See Lee v. Ashcroft,* 216 F.Supp.2d 51 (E.D.N.Y.2002), *as amended by Lee v. Ashcroft,* No. 01cv0997(SJ), 2003 WL 21310247 (E.D.N.Y. May 27, 2003); *Bucknor v. Zemski,* No. Civ.A. 01–3757, 2002 WL 442861 (E.D.Pa. Mar. 21, 2002) (requiring the petitioner to prove his United States citizenship by a preponderance of the evidence); *Gomez v. BICE,* 315 F.Supp.2d 630, 634–35 (M.D.Pa.2004); *Shittu v. Elwood,* 204 F.Supp.2d 876, 878 (E.D.Pa. 2002). These decisions, however, appear to conflict with express language of the INA's direct judicial review provisions, which ostensibly grant *exclusive* jurisdiction over nationality claims to the federal courts of appeal. *See* 8 U.S.C. §§ 1252(b)(2) & (5).

Fortunately, the Ninth Circuit has shed some light on this jurisdictional puzzle. In *Taniguchi v. Schultz,* 303 F.3d 950 (9th Cir.2002), the court confirmed that Section 1252(b)(5) vests exclusive jurisdiction over nationality claims in the federal appellate courts, explaining: "The District Court correctly dismissed [petitioner's] claim for lack of jurisdiction, as such claims must be brought in the courts of appeals." *Id.* at 955. The Ninth Circuit acknowledged that district courts retain some residual jurisdiction to consider Section 2241 petitions "when the petitioner has no other remedy." *Id.* (citing *Magana–Pisano v. INS,* 200 F.3d 603, 608 (9th Cir.1999)). Nonetheless, because the petitioner *did* have a statutory remedy—specifically, the review procedure of 8 U.S.C. § 1252(b)(5)—the court found jurisdiction lacking in the district court. The Ninth Circuit stated: Section 1252(b)(5) "is the exclusive statutory method of determining the claim of citizenship, and it is brought as a petition for review of a final order of removal." *Taniguchi,* 303 F.3d at 955. *Cf. Tuan Ahn Nguyen v. INS,* 533 U.S. 53, 57–58, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2003) (explaining that an immigration petitioner appeals the BIA's determination of derivative citizenship directly to the Fifth Circuit).

■ In *Baeta v. Sonchik,* 273 F.3d at 1261, the Ninth Circuit discussed a possible course of action to follow when a Section 2241 petitioner raises a nationality claim (through 8 U.S.C. § 1252(b)(5)), and (as in the instant case) files the petition in the district court. Of course, as the court recognized, the express language of 8 U.S.C. § 1252(b)(5) directs that such petitions must be filed in the courts of appeal. However, given the state of confusion hanging over this particular body of law, the court declined to punish the petitioner by an overly rigid application of these uncertain jurisdictional rules: "Filing in the district court was not an entirely unguided notion considering the apparent in-

**3.** The origin of the term "Gordian Knot" is: "An intricate knot tied by Gordius, King of Gordium in Phrygia. The oracle declared that whoever should loosen it should rule Asia, and Alexander the Great overcame the difficulty by cutting through the knot with his sword." Oxford English Dictionary (2nd ed.1989). Today, the term refers to: "A matter of extreme difficulty." *Id.*

consistencies in the jurisdictional statutes...." *Baeta*, 273 F.3d at 1264.

The *Baeta* case was before the Ninth Circuit on appeal of the district court's decision to dismiss the petition (on jurisdictional grounds). The Ninth Circuit thus faced a dilemma: under the circumstances, the court wished to consider the merits of petitioner's nationality claim; however, it was unable to do so on appeal, because the district court correctly found itself without jurisdiction. *Id.* Presumably, had the Ninth Circuit simply affirmed the district court's dismissal of the petition, and required the petitioner to refile in that court, the petition would have been barred by 8 U.S.C. § 1252(b)(1)'s 30 day deadline. Thus, the court formulated a creative solution: it transferred the case to itself. *Baeta*, 273 F.3d at 1264. By transferring (rather than simply affirming the dismissal and forcing the petitioner to refile), the petition could still be deemed timely, but was now before the proper court to decide the merits of the petitioner's nationality claim. *Id. See also Castro–Cortez v. INS*, 239 F.3d 1037, 1046 (9th Cir.2001) ("In cases such as these, where the claims could have been brought in this court in the first instance, Congress has provided the jurisdiction-saving tool that permits us to transfer these cases to this court and consider the petitions as though they had never been filed in the district court.") (citations omitted).

In this case, although the circumstances are not identical, this Court finds the reasoning (and the ultimate result) of the Ninth Circuit in *Baeta* and *Castro–Cortez* instructive. In other words, this Court

shall now decide whether to transfer this petition to the Ninth Circuit Court of Appeals, pursuant to 28 U.S.C. § 1631. *See also Batista v. Ashcroft*, 270 F.3d 8, 12 (1st Cir.2001) (affirming district court's transfer of habeas petition to the court of appeal, where a habeas petition raised a nationality claim falling under 8 U.S.C. § 1252(d)(5)); *Paul v. I.N.S.*, 348 F.3d 43, 47–48 (2nd Cir.2003) (citing with approval the Ninth Circuit's transfer procedure employed in *Baeta*). *Cf.* Fed. R.App. P. 4(d) ("If a notice of appeal in either a civil or a criminal case is mistakenly filed in the court of appeals, the clerk of that court must note on the notice the date when it was received and send it to the district clerk. The notice is then considered filed in the district court on the day so noted.").[4]

Title 28 U.S.C. § 1631 provides that if a civil action is filed and the court finds that there is a want of jurisdiction, "the court shall, *if it is in the interests of justice*, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed...." Section 1631 (emphasis added). After transfer, "the action shall proceed as if it had been filed in ... the court to which it is transferred on the date in which it was actually filed in ... the court from which it is transferred." *Id.* Thus, under Section 1631, the Court must determine whether: (1) the Ninth Circuit would have been able to exercise jurisdiction on the date the petition was filed in this Court; (2) this Court lacks jurisdiction over the case; and (3) the transfer is in the interests of justice. *See Baeta*, 273 F.3d at

**4.** To allay any confusion, 8 U.S.C. § 1252(b)(5)(B) does mandate that genuine issues of fact raised in a nationality claim must be decided by the *district court*. However, under the statute, the petition must nonetheless be filed in the *court of appeals* in the first instance. *See* Section 1252(b)(2). Where appropriate, the appellate court then transfers certain issues back to the district court for resolution. See *Rodriguez v. Ashcroft*, No. 02Civ.1188(AGS)(GWG), 2003 WL 42018, at *5 (S.D.N.Y. Jan. 6, 2003) ("whether a genuine issue of fact concerning nationality status exists must be determined in the first instance by the court of appeals.").

1264 (citing *Castro-Cortez*, 239 F.3d at 1046). Applying this standard, the Court concludes that transfer is appropriate. *See Batista*, 270 F.3d at 12; *Dorival v. Ashcroft*, No. CV–02–6162(DGT), 2003 WL 21997740, at *7 (E.D.N.Y. Aug. 21, 2003) (finding no jurisdiction over petitioner's nationality claims on habeas review, and transferring to the proper federal court of appeals); *Rodriguez v. Ashcroft*, No. 02Civ.1188(AGS)(GWG), 2003 WL 42018, at *4–5 (S.D.N.Y. Jan. 6, 2003) (same).

The IJ issued Petitioner's final order of deportation on November 3, 2004; Petitioner filed his petition in this Court on July 29, 2004. Thus, the petition is timely under 8 U.S.C. § 1252(b)(1). Accordingly, the Ninth Circuit (had the petition been properly filed) would have been able to exercise jurisdiction over Petitioner's claim of United States citizenship on July 29, 2004.[5] Moreover, as noted above, the Ninth Circuit has ruled that habeas challenges to nationality determinations cannot originate in the district courts, because of 8 U.S.C. § 1252(b)(5)'s exclusive grant of jurisdiction over such claims in the federal courts of appeal. Finally, for the same reasons outlined in *Baeta*, the "interests of justice" require preservation of Petition-er's good faith claims of United States citizenship, through a transfer of the petition to the Ninth Circuit: (1) "the purpose of the transfer statute 'is to aid litigants who were confused about the proper forum for review'"; (2) the petition "would be time-barred without a transfer"; and (3) given "the uncertain nature of jurisdiction in this area, the [mistaken] filing of the habeas petition [in the district court] is understandable." *See Baeta*, 273 F.3d at 1264 (citations omitted).

The Court finds it is without jurisdiction to consider the merits of Petitioner's nationality claim under 8 U.S.C. § 1252(b)(5). In the interest of justice, this petition is hereby TRANSFERRED to the Ninth Circuit Court of Appeals, pursuant to 28 U.S.C. § 1631.

### III.

### CONCLUSION AND ORDER

For these reasons, the Court concludes it has no jurisdiction to consider the merits of Petitioner's claim of United States citizenship. Rather, 8 U.S.C. § 1252(b) mandates that exclusive jurisdiction of this claim lies in the federal courts of appeals.

---

5. To be accurate, Petitioner's July 29, 2004 petition could not be termed a petition for "review of a final order of deportation," because he had not yet been ordered removed—the final removal order is dated November 3, 2004. Nonetheless, when he filed the petition in this Court, Petitioner had already been detained in immigration custody, pending final removal (this is why he filed the petition). Thus, on July 29, 2004, although the claim was not yet technically ripe for judicial review, Petitioner was already "in custody" and raising a challenge to the immigration officials' determination of his nationality. Whether the Ninth Circuit would have considered, stayed, or dismissed the habeas petition at that time is beyond the scope of this Court's inquiry.

The Court also expresses no opinion on whether Petitioner has fulfilled the adminis-trative exhaustion requirement. *See generally* Gordon, Mailman & Yale–Loehr, *supra*, at § 104.02 ("Exhaustion of administrative remedies is primarily a judge-made doctrine that has evolved into a rule of judicial administration and a pragmatic tool for courts to regulate the timing of judicial review."). Nor does this Court make any finding as to whether Petitioner names the proper Respondent. *See Armentaro v. INS*, 340 F.3d 1058, 1073 (9th Cir.2003) ("Until the exact parameters of the Attorney General's power to detain aliens under the new Homeland Security scheme are decisively delineated, we believe it makes sense for immigration habeas petitioners to name the Attorney General *in addition to* naming the DHS Secretary as respondents in their habeas petitions.") (emphasis in original), *opinion withdrawn by*, 382 F.3d 1153 (9th Cir.2004).

In the interests of justice, the petition is therefore **TRANSFERRED** to the Ninth Circuit Court of Appeals, pursuant to 28 U.S.C. § 1631.

**IT IS SO ORDERED.**