# United States Court of Appeals

## For the First Circuit

No. 14-1858

RICHARD MARVIN THOMPSON,

Petitioner,

v.

LORETTA E. LYNCH,[*]
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Torruella and Lipez, Circuit Judges.

Thomas S. Rome, on brief for petitioner.
Joseph D. Hardy, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice,
Benjamin C. Mizer, Principal Deputy Assistant Attorney General,
Civil Division, and Blair T. O'Connor, Assistant Director, on brief
for respondent.

December 29, 2015

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Loretta E. Lynch is substituted for former Attorney General
Eric H. Holder, Jr. as respondent.

**TORRUELLA**, **Circuit Judge**.   Petitioner Richard Marvin Thompson ("Thompson") is a lawful permanent resident who was convicted of a deportable offense.   Thompson contends that he has derivative citizenship from his father's naturalization and therefore cannot be deported.   Former section 321(a) of the Immigration and Nationality Act provides that a child derives citizenship from the naturalization of one parent if (1) the naturalized parent has "legal custody of the child when there has been a legal separation of the parents"; (2) the naturalization occurs before the child turns eighteen years old; and (3) the child is a lawful permanent resident either at the time of or after the naturalization.   8 U.S.C. § 1432(a) (repealed 2000).

In his petition for review, Thompson argues the Board of Immigration Appeals ("BIA") incorrectly rejected his argument that his parents were in a common-law marriage and legally separated within the meaning of former section 321(a)(3) when they ceased cohabitation.   But Thompson has not proven that his parents' relationship or separation was legally recognized.   As a result, we deny Thompson's petition.

## I.  Facts

Thompson was born in 1982 to Jamaican parents in Jamaica. Sometime after Thompson's birth, Thompson's father moved to the United States and, in 1992, became a naturalized citizen.   In

1997, Thompson's father petitioned for Thompson to immigrate to the United States. Later that year, at the age of fourteen, Thompson was admitted as a lawful permanent resident and moved to the United States to live with his father. Thompson remained in the custody of his father until he reached adulthood.

In 2001, Thompson pleaded guilty to one count of second-degree assault in violation of section 53a-60a(2) of the Connecticut General Statutes and received a sentence of five years' imprisonment, suspended, and three years' probation. The parties do not dispute that this qualified as a removable offense under either 8 U.S.C. § 1227(a)(2)(A)(iii) (an aggravated felony) or 8 U.S.C. § 1227(a)(2)(A)(i) (a crime of moral turpitude committed within five years after admission and for which a sentence of one year or more of imprisonment could be imposed).

By 2012, the government had detained Thompson and initiated deportation proceedings against him. Thompson then filed an N-600 application for citizenship with U.S. Customs and Immigration Services ("USCIS"), claiming that he derived citizenship from his father's naturalization. USCIS denied Thompson's application, explaining that because Thompson's parents were never legally married, they could not have legally separated as required by section 321(a)(3). An immigration judge adopted USCIS's reasoning fully and ordered Thompson be removed to Jamaica.

Thompson appealed the removal order to the BIA. In his appeal, Thompson asserted that his parents "were common law spouses in Jamaica" who legally separated when they ceased cohabitation. The BIA rejected this argument on the grounds that Thompson had not proven that Jamaica recognized common-law marriage at the time of his birth and that the cessation of cohabitation did not qualify as a "legal separation." Based on these conclusions, the BIA affirmed the removal order.

## II. Discussion

Thompson's citizenship claim depends on former section 321(a), which reads:

> A child born outside of the United States of alien parents becomes a citizen of the United States upon fulfillment of the following conditions:
> . . . .
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . .; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years.

-4-

8 U.S.C. § 1432(a) (repealed 2000).[1]  The parties do not dispute that Thompson meets subsections (4) and (5)'s requirements.  What the parties do dispute is whether Thompson meets subsection (3)'s requirement that his father had legal custody of Thompson following a "legal separation" from Thompson's mother.

We have previously held that the term "having legal custody" as used in former section 321(a)(3) is "a question of federal statutory interpretation."  Fierro v. Reno, 217 F.3d 1, 3-4 (1st Cir. 2000).  But because "[l]egal relationships between parents and children are typically governed by state law, there being 'no federal law of domestic relations,'" the term "legal custody" as used in former section 321(a)(3) "should be taken presumptively to mean legal custody under the law of the state in question."  Id. at 4 (quoting De Sylva v. Ballentine, 351 U.S. 570, 580 (1956)).  Based on the same reasoning, we believe "legal separation" as used in former section 321(a)(3) presumptively incorporates the wedlock rules of the state (or, in Thompson's

---

[1]  The Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631, repealed this provision.  The BIA has interpreted the Child Citizenship Act as applying only to individuals who turned eighteen after its effective date.  In re Rodríguez-Tejedor, 23 I. & N. Dec. 153, 162, 2001 WL 865412 (BIA 2001).  Thompson turned eighteen before the Child Citizenship Act's effective date and never argued (either at the administrative level or in his petition to this Court) that the Child Citizenship Act's new provisions should apply to his case.

case, country) in which the legal relationship originated and terminated. See also Wedderburn v. INS, 215 F.3d 795, 799 (7th Cir. 2000) (looking to Jamaican law to determine marital status of petitioner's parents).

Simply put, Thompson's claim of citizenship under former section 321(a)(3) fails because he cannot prove his parents were in a legally recognized relationship from which they could legally separate. As Thompson points out, Jamaica's Property (Rights of Spouses) Act ("Property Act"), defines the term "spouse" as including persons who cohabitated together "as if [they] were in law [husband and wife] for a period of not less than five years." Property (Rights of Spouses) Act, pt. I, § 2(1) (Act No. 4/2004) (Jam.). But Thompson fails to explain how a law enacted in 2004, and with an operational date of 2006, id., helps us understand whether a relationship that must have ended by 1992 (the year Thompson's father became a United States citizen) was legally recognized. Cf. Wedderburn, 215 F.3d at 799 (recognizing the petitioners' "diligent search" did not find any Jamaican law proving that Jamaica recognized common-law marriages as of 2000). In fact, Part V of the Property Act states that it does not affect "any legal proceeding in respect of property. . . instituted" or "any remedy in respect of any such legal proceeding . . . acquired, accrued or incurred" prior to its enactment -- in other words, by

-6-

its terms, it is not retroactive. Property (Rights of Spouses) Act, pt. 5, § 24 (Act No. 4/2004). Without a legally recognized relationship, Thompson's parents could not have legally separated as required by section 321(a)(3).

Thompson's failure to prove that Jamaica recognized common-law marriages while his parents were in a relationship is dispositive of his claim. But even if the Property Act applied retroactively, we note that Thomson has adduced no evidence showing his parents were common-law spouses within its definition. Because the Government proved that Thompson was born abroad, Thompson had the burden of proving "by a fair preponderance of the evidence" his derivative citizenship. Leal Santos v. Mukasey, 516 F.3d 1, 4 (1st Cir. 2008). The only evidence of this fact in the administrative record is Thompson's bare assertion in his BIA appeal.[2] Although this Court may consider evidence outside of the administrative record, Batista v. Ashcroft, 270 F.3d 8, 14-15 (1st Cir. 2001), Thompson has not provided any additional evidence on

---

[2] In his BIA brief, Thompson directs the BIA to look at a "[c]opy of submission evidencing Common Law Marriage Relationship previously submitted to DHS on June 27, 2012." This submission was not included in the administrative record nor separately submitted to this Court. Moreover, USCIS's denial of Thompson's citizenship application states it requested Thompson's attorney to "provide legal authority for the theory that she represented as the basis of [Thompson's] derivative citizenship" but she did not respond.

appeal.  For example, there are no affidavits from either of Thompson's parents stating that they lived together at the time of his birth.  Thompson himself only provided this assertion through filings by his counsel.[3]  Thus the factual basis for Thompson's claim is also suspect.

Finally, even if Thompson's parents were in a common-law marriage, Thompson has failed to provide any details (factual or legal) showing that they "legally separated."  Thompson's argument is entirely premised on the idea that common-law spouses legally separate when they cease cohabitation.  Thompson has failed to cite any authority, federal or Jamaican, that supports his purported definition of "legal separation" and we have not found any.

## III.  Conclusion

For the reasons stated above, Thompson's petition for review is **Denied**.

---

[3]  When a petitioner makes a citizenship claim, we have jurisdiction under 8 U.S.C. § 1252(b)(5)(A) and (B) "to determine whether there is a 'genuine issue of material fact' as to the citizenship claim" and if so, we must transfer the case to district court for fact-finding proceedings.  Batista, 270 F.3d at 12. Because we have equated this to summary judgment review, id., we conclude Thompson could not rely solely on unsupported statements in his pleadings to prove his parents' relationship.