# United States Court of Appeals
## For the First Circuit

No. 22-1496

SUNIL KUMAR SHARMA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE DEPARTMENT OF HOMELAND SECURITY

Before

Kayatta, Lynch, and Howard,
Circuit Judges.

Pablo A. Lozano, Law Student Advocate, with whom Philip L. Torrey, Crimmigration Clinic, Harvard Law School, Andrew Santana, Serena Hughley, Shing-Shing Cao, and Farris Peale, Law Student Advocates, were on brief, for petitioner.
David Kim, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, and Matthew A. Connelly, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, were on brief, for respondent.

April 28, 2023

**KAYATTA**, <u>Circuit Judge</u>.    Petitioner Sunil Sharma challenges a Final Administrative Removal Order on grounds that he derived U.S. citizenship as a child.  Because we hold that he did not, we deny his petition.

## I.

Sharma was born in India in 1979 to Indian-citizen parents.  While he was a young child and still living in India, his mother moved to the United States and obtained lawful permanent resident status.  In April 1990, after Sharma's father had died, Sharma came to the United States to live with his mother in Massachusetts.  According to Sharma, he "entered as a child without lawful immigration status."

On August 24, 1995, Sharma's mother became a naturalized U.S. citizen.  Then, on January 3, 1996, when Sharma was sixteen years old, Sharma's mother filed an application for lawful permanent resident status on his behalf.  Sharma says that he went "to an interview with an immigration officer" at which "the officer said that [his] application could not be approved at that time because [he] had a juvenile [criminal] record and that [he] would need to come back."  Sharma does not dispute that he had a juvenile record as of the date of that interview.

Subsequently, on April 16, 1996 -- while Sharma's application was still pending -- he was involved in a shooting at a restaurant that resulted in the death of a bystander.  He was

arrested later that same year and, on April 28, 1999, was convicted of second-degree murder and sentenced to life in prison by a Massachusetts state court.

Sharma's permanent residence application was denied on June 17, 1996 for "lack of prosecution," after he failed to appear for an adjustment interview scheduled for May 22, 1996 without "notify[ing] [the government] of [his] inability to appear for [the] interview." Sharma makes no allegation that he had been arrested by the date of the interview,[1] but does allege that he "could not attend" -- even though he had "planned to go" -- because he "got into trouble with the law."

After serving over 20 years in prison, Sharma was granted parole in 2021. On April 7, 2022, the Department of Homeland Security (DHS) issued the Notice of Intent to Issue a Final Administrative Removal Order relevant to this petition. The notice alleged that Sharma was neither a citizen of the United States nor lawfully admitted for permanent residence, and charged him with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony as defined in 8 U.S.C § 1101(a)(43)(A). In response, Sharma asserted that he was not removable because he had derived U.S. citizenship through his

_____

[1] The date of his arrest is not clear from the record, but the earliest potential arrest date referenced therein is sometime in June 1996.

mother in 1996 -- at the time his permanent residence application was submitted -- pursuant to former section 321(a) of the Immigration and Nationality Act (INA).

DHS rejected Sharma's proposed reading of former section 321(a) and issued a Final Administrative Removal Order on June 1, 2022. Sharma timely filed a petition for review with this court.

## II.

We have jurisdiction to review Sharma's citizenship claim pursuant to 8 U.S.C. § 1252(b)(5). See Thompson v. Lynch, 808 F.3d 939, 942 n.3 (1st Cir. 2015). Under that statute, if we determine that "there is a 'genuine issue of material fact' as to the citizenship claim," then "we must transfer the case to district court for fact-finding proceedings." Id. (quoting Batista v. Ashcroft, 270 F.3d 8, 12 (1st Cir. 2001)). If the case turns "entirely on issues of law, including the meaning of the automatic citizenship statute in question, . . . our review is de novo and there is no occasion to transfer the case to a district court." Fierro v. Reno, 217 F.3d 1, 3 (1st Cir. 2000).

## III.

Sharma's only ground for contesting removability is that he became a citizen pursuant to the derivative citizenship law that was in effect before he turned eighteen. That law, former section 321(a) of the INA, provided:

- 4 -

A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (1994), repealed by Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103(a), 114 Stat. 1631, 1632.

The government does not contest that Sharma satisfied the second and fourth conditions of the statute -- his mother, as his sole surviving parent, naturalized before Sharma turned eighteen. This appeal thus turns on the fifth condition, half of which is undisputed because the parties agree that Sharma was not "residing in the United States pursuant to a lawful admission for

- 5 -

permanent residence at the time of [his mother's] naturalization." 8 U.S.C. § 1432(a)(5) (1994).  So the pivotal question before us is whether Sharma, after his mother's naturalization, "beg[an] to reside permanently in the United States while under the age of eighteen years."  Id.

In issuing the Final Administrative Removal Order, DHS relied on the Board of Immigration Appeals' decision in Matter of Nwozuzu, 24 I. & N. Dec. 609 (B.I.A. 2008), which held that the phrase "reside permanently" as used in former section 321(a)(5) requires the noncitizen child to "acquire lawful permanent resident status."  Id. at 613.  Since Sharma never became a lawful permanent resident, DHS concluded he had not derived citizenship. Sharma, in contrast, asserts that the statute requires only an "objective manifestation of . . . intent to reside permanently in the United States," in line with the interpretation of former section 321(a)(5) adopted by the Second Circuit in Nwozuzu v. Holder, 726 F.3d 323, 333 (2d Cir. 2013), and the Ninth Circuit in Cheneau v. Garland, 997 F.3d 916, 918 (9th Cir. 2021) (en banc). Sharma argues that his permanent residence application was such a "manifestation," and thus he derived citizenship when he was sixteen.

In Thomas v. Lynch, 828 F.3d 11 (1st Cir. 2016), we faced the same question regarding the meaning of "reside permanently" as used in former section 321(a)(5).  Id. at 14.  There, we did not

need to pick between the dueling meanings presented by the parties because the petitioner would not have derived citizenship even under the "objective manifestation" test he urged on the court. Id. at 14-15.

The same is true here.[2] Assuming, without deciding, that former section 321(a)(5) requires only an "objective manifestation of . . . intent to reside permanently in the United States," and further assuming that all of Sharma's factual allegations in the record are true, Sharma's citizenship claim still fails.[3] Sharma argues that this "objective manifestation" test "depends upon clear and objectively evaluable metrics of intent," such as an application for permanent resident status. But subsequent events can shed light on how reliably the relevant "metric" demonstrates an individual's intent. Cf. Aponte-Dávila v. Mun. of Caguas, 828 F.3d 40, 48 (1st Cir. 2016) (noting that, for purposes of determining a party's domicile at the time a diversity action was filed, "subsequent events may bear on the sincerity of a professed

---

[2] As in Thomas, because Sharma's citizenship claim fails under his own preferred reading of the statute, "we need not decide whether the BIA's construction of former section 321(a) is entitled to Chevron deference." Thomas, 828 F.3d at 15 n.4.

[3] Because we assume Sharma's factual allegations are true, we have no reason to transfer this case to the district court for fact-finding. Thompson, 808 F.3d at 942 n.3. Nor has any party suggested that if we were to adopt the "objective manifestation" test, we would need to remand this matter to DHS to determine whether Sharma has met that test.

intention to remain" (quoting García Pérez v. Santaella, 364 F.3d 348, 351 (1st Cir. 2004))).

In Sharma's case, the subsequent events undermine his reliance on his permanent residence application as his relevant "objective manifestation." Sharma, without any prior notice to the government and having been told he must appear for another adjustment interview, failed to show up to his May 1996 interview, and then failed to take any steps to follow up on his application, ultimately resulting in its denial. The only explanation he provides for skipping the interview is that he "got into trouble with the law and could not attend," but he makes no allegation that he was in custody at the time. Further, the "trouble with the law" appears to be a reference to the April 1996 shooting, which occurred after Sharma had already been informed by an immigration official that his juvenile criminal record posed an issue for his permanent residence application. Sharma should therefore have known at the time of the shooting that committing a serious crime would further imperil his immigration status. The shooting, the subsequent missed interview, and the absence of any attempt to revive his application indicate that Sharma lacked commitment to his application process. Applying Sharma's proposed reading of former section 321(a)(5) to the facts, we therefore conclude that his permanent residence application does not show

the intent to reside permanently that his own proffered legal test requires.

This conclusion does not conflict with the central holdings of either the Second Circuit's decision in Nwozuzu or the Ninth Circuit's decision in Cheneau, each of which adopted the "objective manifestation" test. In each of those cases, the court held that the petitioner's application for lawful permanent status constituted the necessary "objective manifestation" of intent to reside permanently. Nwozuzu, 726 F.3d at 334; Cheneau, 997 F.3d at 925; Cheneau v. Garland, 848 F. App'x 301 (Mem.) (9th Cir. 2021) (concluding, on remand from the en banc court, that the petitioner had derived citizenship). But in neither case did the petitioner completely abandon his adjustment-of-status process as is the case here; to the contrary, the petitioners in both cases ultimately became permanent residents after they turned eighteen. Nwozuzu, 726 F.3d at 325; Cheneau, 997 F.3d at 918. Further, in Cheneau, the court specifically noted that its holding would not extend to an individual who "unlawfully entered the United States" and subsequently applied for permanent residence, where the individual "abandoned that application" by "depart[ing] the country knowing that he needed to remain in the United States while his application was pending." 997 F.3d at 925 n.6.

- 9 -

**IV.**

For the foregoing reasons, the petition for review is <u>denied</u>.