MATTER OF TIJERINA-VILLARREAL

In Deportation Proceedings

A-13644691

*Decided by Board July 14, 1969*

In deportation proceedings where respondent claims to have derived citizenship through his father who was born in this country but such claim is not supported by a preponderance of credible evidence, the clear, convincing and unequivocal burden of proof test, as set forth in *Woodby* v. *Immigration and Naturalization Service*, 385 U.S. 276, is met in establishing alienage upon proof of birth abroad.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(20) [8 U.S.C. 1182(a)(20)]—no immigrant visa.

| ON BEHALF OF RESPONDENT: | ON BEHALF OF SERVICE: |
|---|---|
| Louis T. White, Esquire | Irving A. Appleman |
| Post Office Box 955 | Appellate Trial Attorney |
| Alamo, Texas 78516 | Bernabe Q. Maldonado |
| (Brief filed) | Trial Attorney |
| | (Brief filed) |

The respondent is a native of Mexico. He has been found deportable under the provisions of section 241(a)(1) of the Immigration and Nationality Act as an alien who was excludable at the time of entry under the provisions of section 212(a)(20) of the Act (8 U.S.C. 1251(a)(1) and 1182(a)(20)). He appeals from an order entered by the special inquiry officer on October 21, 1968 granting him the privilege of voluntary departure in lieu of deportation. He maintains that he is not deportable as an alien because he derived United States citizenship through his father who was born in the United States.

The respondent concedes that he was born in Mexico on March 25, 1944. He also concedes that he last entered the United States at the port of Hidalgo, Texas on December 19, 1966; that he was then entering for the purpose of residing in the United States as

a citizen; that he did not present an immigration visa; and that he has never been admitted to the United States for permanent residence (pp. 4 and 5). Counsel for the respondent and the trial attorney further stipulated that the respondent's father was born on March 19, 1912, at La Lomita, Texas and is now a citizen of the United States; that the respondent's mother was born in Mexico on March 12, 1910, and is a citizen of Mexico; that they were lawfully married in Mexico on October 3, 1930, and that "the main issue to be resolved in this proceeding is whether or not the respondent's father had sufficient residence, prior to respondent's birth . . . to confer citizenship on the respondent under the provisions of section 201(g) of the Nationality Act of 1940" (8 U.S.C. 601(g), 1940 Ed.) (p. 8).

Section 201(g) of the Nationality Act of 1940 provides in substance that a person born outside of the United States of parents one of whom is a citizen of the United States derives United States citizenship at birth if prior to the birth of such person, the citizen parent resided in the United States or one of its outlying possessions for a period of ten years, at least five of which were after attaining the age of 16 years. The respondent in order to derive citizenship through his father has the burden of establishing that his father resided in the United States for a total of ten years prior to the respondent's birth and that five of the ten years were subsequent to March 19, 1928, since his father was born on March 19, 1912.

The evidence with regard to the residence of the respondent's father prior to the respondent's birth in Mexico has been fully discussed in the opinion of the special inquiry officer. Briefly, it establishes that four of the respondent's brothers and one sister have been issued certificates of derivative citizenship. They were all born prior to the effective date of the Nationality Act of 1940; and, under the law in effect on the date of their birth there was no requirement that their father reside in the United States for any specified period of time.[1] The applications submitted in their cases show that the periods of their father's residence in the United States were variously alleged to be from 1912 to 1914 and from 1943 to 1959; from 1912 to 1915 and from 1943 to the date of the application; no period of residence in the United States alleged; and residence in the United States "unknown."

Three applications for derivative citizenship have been submitted by or on behalf of the respondent. All have been denied on the

---

[1] Section 1993, Revised Statutes and section 1, Act of May 24, 1934.

ground that the respondent's father did not have the required period of residence in the United States. The respondent's father testified under oath on June 19, 1963, in connection with the application filed on April 29, 1963, that he resided in Mexico from 1914 until April of 1943. It was alleged in connection with the second application for derivative citizenship, submitted in behalf of the respondent on October 15, 1964, that his father resided in the United States from 1912 to 1915 and from 1943 until the date of that application.

The third application for derivative citizenship was submitted by the respondent on December 22, 1966. The respondent's father testified on October 25, 1967, in connection with this application, that he was taken to Mexico as an infant but reurned to the United States in 1913; that he resided in the United States from 1913 to 1922 and from 1930 to 1936. He further testified that he has resided in the United States from 1938 to the present time (Ex. 14, p. 5). When questioned concerning the discrepancies in his previous testimony concerning his residence in the United States, the respondent's father testified:

Well, because I didn't have a lawyer and there was no one to tell me where I'd been or where I'd lived, or with whom I had worked during this time . . . I'm telling the truth now because this man told me . . . asked me a lot of questions that no one has ever asked me before. (p. 9 of Ex. 14)

The evidence introduced by the respondent in this proceeding to rebut the Government's claim of alienage is practically the same as the evidence he submitted in support of his application for derivative citizenship filed on December 22, 1966. The respondent's father testified on August 14, 1968 that he was born in Texas on March 19, 1912; that he was taken to Mexico "at the age of three" (1915); that he "returned and lived with [his] grandmother here in McAllen from that age until I was about seven or eight years old" (1920); that he returned to Mexico "about 1921 more or less" and came back to the United States "in 1930 and worked here in the United States with a Mr. Woods until 1936"; that in 1930 he returned to Mexico to marry and remained there for only ten days "because I had to work"; that his wife continued to live with her parents in Mexico; that he visited her "about every six or eight months"; that he resided in Mexico "in 1937 and part of 1938" when he returned to Raymondville, Texas; that he secured a birth certificate in 1943 and registered under the Selective Service on May 1, 1943 (Ex. 4); and that he has resided in the United States "from 1938 to the present time" (pp. 9, 14, 17, 19, 20 and 23).

The witness, Walter Lane, who testified in support of the respondent's derivative application filed on December 22, 1966, also testified in this proceeding. He stated that he worked with the respondent's father on the Otto Wood ranch a few miles north of Edinburg, Texas, from 1930 to 1936; that the respondent's father "lived in a house there on the ranch" and that the respondent's father did not have his family with him (pp. 53, 80). This witness in a statement taken from him on October 25, 1967 testified that he has known the respondent's father "about 36 years . . . we worked on the Wood ranch"; that when he first met the respondent's father "I think he was living here in Edinburg" and that during the five years that the respondent's father worked on the Wood ranch he lived "Here in town, he would rent a house" (pp. 2 and 3 of Ex. 14).

The same documentary evidence submitted by the respondent in support of his derivative application filed on December 22, 1966 was also introduced in this proceeding. An affidavit executed by Abundio Amador (now deceased) (p. 16) on December 2, 1967 states that he and the respondent's father lived and worked on the Otto Wood ranch from at least 1933 to 1936 (Ex. 3). The respondent's paternal grandmother states in an affidavit executed on January 16, 1967 that her son, the respondent's father, resided in the United States from at least 1915 to 1922; from 1930 to 1936 and from 1938 to the present time (Ex. 5). Tomasa Anzal Davila verified the information contained in the affidavit of the respondent's grandmother in an affidavit executed on June 10, 1967. A 1920 census record submitted by the respondent states that Jose Maria Tijerina, age 7, born in Texas, nephew of Trinidad and Perfecta S. Sanchez, was enumerated in the Sanchez family at 1919 - 17th Ave., McAllen, Texas.

The burden to establish alienage in a deportation proceeding is upon the Government. When there is a claim of citizenship, however, one born abroad is presumed to be an alien and must go forward with the evidence to establish his claim to United States citizenship, *Matter of A—M—*, 7 I. & N. Dec. 332, 336 (BIA, 1956); *U.S. ex rel. Rongetti v. Neelly*, 207 F.2d 281–284 (7 Cir., 1953).

The issue here is whether the respondent has presented a preponderance of credible evidence sufficient to overcome the presumption of alienage which attaches by reason of his birth in Mexico. The record before us presents conflicting evidence as to whether the respondent's father resided in the United States for the required period of five years subsequent to his 16th birthday

and prior to the respondent's birth so as to confer citizenship on the respondent under the provisions of section 201(g) of the Nationality Act of 1940. Where the evidence presents a conflict with regard to whether the respondent acquired citizenship at birth, it must be evaluated and weighed and a finding made with regard to its credibility before the test for burden of proof on the issue of deportability as set forth in *Woodby* v. *INS* [2] (385 U.S. 276) comes into play. Cf. *Matter of Lugo-Guadiana*, 12 I. & N. Dec. 726 (BIA, 1968).

We are mindful of the fact that United States citizenship is a privilege which should be guarded zealously. We also realize that where a claim of derivative citizenship has reasonable support, it cannot be rejected arbitrarily. However, when good reasons appear for rejecting such a claim such as the interest of witnesses and important discrepancies, then the special inquiry officer need not accept the evidence proffered by the claimant. Experience has demonstrated in cases of this character that the testimony of parties in interest cannot always be accepted or relied upon. Cf. *Lew Wah Fook* v. *Brownell*, 218 F.2d 924, 925 (9 Cir., 1955) ; *Flynn ex rel. Yee Suey* v. *Ward*, 104 F.2d 900 (1 Cir., 1939).

The respondent's father in prior applications for derivative citizenship submitted in behalf of five of his oldest children as far back as 1956 has consistently stated that he resided in Mexico from 1915 to 1943. Concerning his residence in the United States, he now claims that he actually resided in this country from 1930 to 1936 and from 1938 to the present time. A finding of lack of credibility with regard to his present testimony is more than amply warranted in light of his testimony on prior occasions that he "didn't have a lawyer and there was no one to tell [him] where I'd been or where I'd lived, or with whom I had worked during this time" (p. 9 of Ex. 14).

Furthermore, the affidavit and the testimony of the witness, Walter Lane, reveal inconsistencies which cannot be reconciled. His affidavit executed on October 21, 1967, states that he worked with the respondent's father on the Otto Woods ranch for about two years, and that thereafter the respondent's father worked on the McAllen ranch, but that he was confident that the respondent's father resided in the United States from 1930 to 1936 (Ex. 9 attached to Ex. 12). Two days later in his statement of October

---

[2] The Supreme Court held in *Woodby* that the test for burden of proof in a deportation proceeding is as follows: "No deportation order may be entered unless it is found by clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true."

25, 1967 he testified that the respondent's father worked on the Wood ranch for a total of five years (p. 3 of Ex. 14). When examined under oath by an immigration officer on October 25, 1967, he stated that his testimony was based upon what the respondent's father told him; that he thought the respondent's father was living in Edinburg, Texas, when he first met him, and that he did not have personal knowledge of where the respondent's father was living when he first met him. During this proceeding the witness testified that the respondent's father resided in a house on the Otto Wood ranch from 1930 to 1936 and that the respondent's father did not work for anyone else during the period 1930 to 1936 (pp. 53, 80).

The affidavit (Ex. 5) executed by the respondent's paternal grandmother does not appear to be credible in light of her testimony in a derivative application filed by the respondent's sister in 1960 relating to the respondent's brother, Juan. She now claims that her son resided with her in McAllen, Texas, from 1915 to 1922, and that she knows that the respondent's father "returned to the United States in the year 1930 and stayed . . . until sometime in the year 1936." At the time of the derivative application she testified that the respondent's father resided in the United States from 1912 to 1914 and from 1943 to the date of the application (Ex. 6).

Counsel objects to the propriety of the Government calling the nationality attorney who conducted the prior derivative citizenship proceeding as a witness. We note that counsel made no objection to the appearance of the nationality attorney during the hearing. 8 CFR 242.14(c) provides that "the special inquiry officer may receive in evidence any oral or written statement which is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial." Since the record of the derivative citizenship proceeding under section 341 of the Act could have been received in evidence without the testimony of the nationality attorney, we find no prejudice to the respondent since counsel had an opportunity to cross-examine the witness.

Upon evaluating and weighing the evidence submitted by both the Government and the respondent, we find that the respondent's claim of derivative citizenship is not supported by a preponderance of credible evidence and for this reason, there is ample support for the rejection of the respondent's claim that he is a citizen of the United States. Based on this finding, we conclude that

there is clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true.

An order dismissing the appeal will be entered.

**ORDER:** It is directed that the appeal be and the same is hereby dismissed.