Aldevino Manuel LEAL SANTOS,
Petitioner,

v.

Alberto R. GONZALES, Respondent.

Civil Action No. 07–10203–WGY.

United States District Court,
D. Massachusetts.

July 10, 2007.

Cheryl J. Sturm, Chadds Ford, PA, for Petitioner.

Jesse M. Bless, Lyle D. Jentzer, Office of Immigration and Litigation, Washington, DC, for Respondent.

*MEMORANDUM*

YOUNG, District Judge.

This case presented a single factual issue for resolution. Aldevino Manuel Leal Santos ("Aldevino") would have derivative citizenship only if his mother, Francelina Augusta Leal Santos ("Francelina"), was physically present in the United States for a certain period of time prior to his birth. Aldevino was required to show that Francelina was in the United States for at least ten years, five years after turning fourteen. To reach this factual issue, however, this Court had to first wade through a thicket of procedural issues, some of which appeared to be of first impression.

## I. BACKGROUND

Aldevino arrived in the United States as a five-year-old boy in 1962 with his parents, brother, and sister. Administrative Record ("A.R.") 334, 549, 551. The family settled in Massachusetts. Aldevino had what was, by all appearances, an ordinary childhood. As a young adult, however, Aldevino fell in with a bad crowd and began trafficking in drugs. A.R. 18–20.

In 1997, Aldevino pled guilty to the charges of conspiracy to possess with intent to distribute more than five kilograms of cocaine, conspiracy to commit money

laundering, subscribing to a false tax return, and criminal forfeiture. Aldevino was sentenced to 135 months of imprisonment, five years of supervised release, and a $600 special assessment. *United States v. Santos,* No. 96–cr–10231 (D.Mass. Oct. 29, 2001) (Woodlock, J.) (amended judgment).

While Aldevino was serving his term in Pennsylvania, the government instituted removal proceedings. Aldevino contested the proceedings, *inter alia,* on the ground that he had derivative citizenship through his mother, Francelina, who was born in Portugal but whose own mother was born in Massachusetts. Francelina testified on Aldevino's behalf that she came to America twice as a girl. An immigration hearing officer found that Francelina was "distraught, confused, and distressed." A.R. 35. The hearing officer further stated that while he found that Francelina was neither evasive nor misleading, he was unable to credit her testimony over a visa application that contradicted Francelina's testimony about when she had come to the United States. *Id.* at 3. The Board of Immigration Appeals (the "Board") affirmed. *Id.*

Aldevino filed his petition for review with the Third Circuit. The Third Circuit certified, pursuant to 8 U.S.C. § 1252(b)(5)(B), that a genuine issue of material fact existed with respect to Aldevino's derivative citizenship claim. *Santos v. Attorney General,* No. 06–2174 (3d Cir. Oct. 26, 2006). But, because Aldevino had been deported in the interim, the Third Circuit was unsure as to which district court to transfer the case for fact-finding. *Id.* The government suggested the Eastern District of Pennsylvania for the convenience of Aldevino's counsel. Respondent's Response to the Court's Oct. 26, 2006 Order, *Santos v. Attorney General,* No. 06–2174 (3d Cir. Nov. 6, 2006). Aldevino's counsel in turn requested transfer to the District of Massachusetts, where Francelina resides, so that she might be able to testify. Petitioner's Response to the Court's Oct. 26, 2006 Order, *Santos v. Attorney General,* No. 06–2174 (3d Cir. Nov. 8, 2006). The Third Circuit agreed to transfer the case to the District of Massachusetts, whereupon the case was assigned to this session of the Court.

## II. PROCEDURAL MATTERS

The Third Circuit's transfer of the case directly to the District of Massachusetts in this immigration proceeding appears unprecedented. It raises several procedural issues that this Court addresses in turn.

### A. Jurisdiction

The transfer provision provides that when a circuit court finds a genuine issue of material fact, the court "shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides." 8 U.S.C. § 1252(b)(5)(B) (2005). Literally read, this statute permits transfer only to the district in which the petitioner resides. Because Aldevino has been deported, there is no district court that could hear this case under the literal interpretation of the statute. The Third Circuit implicitly rejected this literal interpretation when it asked the parties where it should transfer the case.

 The Third Circuit's implicit analysis is sound. Aldevino's removal did not render this case moot because cancellation of removal is a remedy that remains available. *See Lopez v. Gonzales,* —— U.S. ——, 127 S.Ct. 625, 629 n. 2, 166 L.Ed.2d 462 (2006). Since section 1252(b)(5) constitutes the sole avenue for review of nationality claims on a petition for review, 8 U.S.C. § 1252(b)(5)(C), the literal interpretation of the transfer statute would raise serious constitutional questions with respect to the ability of the government to

deport citizens without their ever having a day in court. *See Minasyan v. Gonzales,* 401 F.3d 1069, 1075 (9th Cir.2005) ("The Constitution does not permit American citizenship to be so easily shed." (quoting *Rivera v. Ashcroft,* 394 F.3d 1129, 1136 (9th Cir.2005))); *Rodriguez v. United States Dep't of Justice,* Civil No. 07–cv–055–SM, 2007 WL 1321712, at *1 n. 2 (D.N.H. May 4, 2007) ("[T] he Constitution is violated when a person with a nonfrivolous claim to United States citizenship is deported without receiving a determination of that claim.").

Courts do retain a tiny sliver of habeas jurisdiction with respect to petitioners claiming that they are citizens. 8 U.S.C. § 1252(e)(2)(A) (2005). In *Leitao v. Reno,* 311 F.3d 453, 455 (1st Cir.2002), the First Circuit held that a deported alien's habeas petition was not moot because he had filed the habeas petition while he was still in custody, thereby satisfying the jurisdictional custody requirement of 28 U.S.C. § 2241. When, however, deportation precedes the habeas petition, courts have held that they lack jurisdiction because the "in custody" jurisdictional requirement is not satisfied. *See Sadhvani v. Chertoff,* 460 F.Supp.2d 114, 118–19 (D.D.C.2006) (collecting cases).

In light of the foregoing, this Court construes the transfer provision as a venue provision rather than as stating a jurisdictional requirement. *Cf. INS v. St. Cyr,* 533 U.S. 289, 304–05, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (construing immigration statute to avoid constitutional question). This interpretation ensures the availability of district courts to make the factual determinations underpinning citizenship claims.

This interpretation of the transfer provision as a venue provision also makes sense as a practical matter. Had Aldevino still resided in the Middle District of Pennsyl-vania and the Third Circuit transferred the case to that district, Aldevino could still have requested transfer to the District of Massachusetts under the general venue transfer statute, 28 U.S.C. § 1404(a) (2005).

Still, the question remained whether venue was proper. This Court posed the question to the parties, who agreed that venue was proper. Aldevino's counsel further stated explicitly that this Court had personal jurisdiction over him. Based on these representations, this Court was satisfied that jurisdiction and venue were proper.

## B. Choice of Law

There is the further question whether this Court ought follow First Circuit or Third Circuit law. The rule with respect to state-law claims is that the transferee court applies the choice-of-law rules of the transferor court. *Ferens v. John Deere Co.,* 494 U.S. 516, 519, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). The Supreme Court has yet to address the question with respect to claims arising under federal law.

■ Although at least one transferee court has applied the circuit law of the transferor court, *see In re Rospatch Sec. Litig.,* 760 F.Supp. 1239, 1256–57 (W.D.Mich.1991), circuit courts considering the issue have applied their own circuit law. *Hartline v. Sheet Metal Workers' Nat. Pension Fund,* 286 F.3d 598, 599 (D.C.Cir.2002); *McMasters v. United States,* 260 F.3d 814, 819 (7th Cir.2001); *Murphy v. F.D.I.C.,* 208 F.3d 959, 966 (11th Cir.2000); *Newton v. Thomason,* 22 F.3d 1455, 1460 (9th Cir.1994). These courts have followed the reasoning laid out in the seminal case, *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1175–76 (D.C.Cir.1987). In that case, then-Judge Ginsburg wrote that "it is

logically inconsistent to require one judge to apply simultaneously different and conflicting interpretations of what is supposed to be a unitary federal law." This reasoning is based on the fiction that federal law is the same everywhere, though federal judges have, of course, reached conflicting interpretations of federal law. This Court need not determine whether this fiction makes good sense because the parties agree that First Circuit law ought apply because any appeal from this Court's judgment would be to the First Circuit. This Court will follow the parties' lead and apply First Circuit law. *See May v. Social Security Admin. Comm'r*, 125 F.3d 841, 1997 WL 616196, at *1 n. 1 (1st Cir. Oct.7, 1997) (unpublished opinion) (noting that neither party had objected to the District of Maine's applying Second Circuit law).

## III. DERIVATIVE CITIZENSHIP

### A. Burden of Proof

■■■ The parties disputed whether Aldevino bore the burden of proving derivative citizenship. In removal proceedings, the United States must establish the alienage of the person sought to be removed. 8 C.F.R. § 1240.8(c) (2007). The government bears the burden by "clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 281, 284–85, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). The Board applies the rule that evidence of foreign birth gives rise to a rebuttable presumption of alienage. *Matter of Tijerina–Villarreal*, 13 I. & N. Dec. 327, 330–31 (BIA 1969). The petitioner may destroy this presumption by proving derivative citizenship by a fair preponderance of the evidence. *Id.*

Federal courts have accepted the Board's operative legal framework. The First Circuit has stated that a petitioner facing removal must demonstrate that he has derivative citizenship. *Batista v. Ash-croft*, 270 F.3d 8, 15 (1st Cir.2001); *Alexander v. INS*, 74 F.3d 367, 369 (1st Cir. 1996). Federal courts addressing the burden of persuasion have held that a foreign-born petitioner challenging removal bears the burden of proving derivative citizenship by a preponderance of the evidence. *Chau v. United States Dep't of Homeland Security*, 424 F.Supp.2d 1159, 1163 (D.Ariz.2006); *Foncette v. Bureau of Immigration Customs and Enforcement*, Civ. No. 1:CV–05–2453, 2007 WL 140993, at *5 (M.D.Pa. Jan.17, 2007); *Lancaster v. Gonzales*, No. 06 CV 1203, 2006 WL 3533111, at *3 (W.D.La. Oct.2, 2006).

Aldevino ignores the foregoing authority. Instead, he observes that the government bears, at all times, the burden of proving alienage by clear and convincing evidence. Properly framed, Aldevino's challenge is to the Board's rule that evidence of foreign birth creates a rebuttable presumption that he is an alien. More precisely, his contention is that the rebuttable presumption actually constitutes impermissible burden-shifting. *See Sint v. INS*, 500 F.2d 120, 123 (1st Cir.1974) (stating that the government may not shift to the petitioner the burden of proving alienage).

Were the government to bear the burden of proving by clear and convincing evidence that Aldevino does not have derivative citizenship, the instant case would resemble a denaturalization proceeding. In such a proceeding, the government bears the burden by clear and convincing evidence. *Fedorenko v. United States*, 449 U.S. 490, 505, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981). This analogy to a denaturalization proceeding is unwarranted because Aldevino has not established the preliminary fact that he is a citizen. Had Aldevino applied for naturalization at a time when he did not face removal, he would have had to prove derivative citizenship by

a fair preponderance of the evidence. *Berenyi v. INS*, 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967). This burden is placed on the person applying for naturalization because, once granted, citizenship "cannot lightly be taken away." *Id.* This rationale requires that Aldevino prove by a fair preponderance of the evidence that he is a citizen, regardless of whether he faces removal.

■ For these reasons, the Court rejected Aldevino's contention that the government has the burden of proving by clear and convincing evidence that Aldevino does not have derivative citizenship. The Court held instead that Aldevino must establish by a fair preponderance of the evidence that he has derivative citizenship.

**B. Applicability of the Federal Rules of Evidence**

After the Third Circuit transferred the case to this district, Francelina's condition deteriorated and she became unavailable to testify. Aldevino indicated that John Mello ("Mello"), would be available to testify, consistent with an affidavit, that Francelina told him many times ever since he was a child that she came to the United States twice as a girl. Mello is Francelina's grandson and Aldevino's nephew. Recognizing that such testimony constitutes hearsay, Aldevino contended that the Federal Rules of Evidence do not apply in removal proceedings. Suppl. Response [Doc. No. 8], at 1–2.

■ The immigration statute makes clear that the Federal Rules of Evidence do not apply in the administrative proceedings. 8 U.S.C. § 1534(h) (2005). Rather, "the less rigid constraints of due process impose outer limits based upon considerations of fairness and reliability." *Yongo v. INS*, 355 F.3d 27, 30 (1st Cir.2004). This authority is, however, limited to administrative proceedings.

In *Alexander v. INS*, the First Circuit bypassed the issue whether the Federal Rules of Evidence applied in section 1252(b)(5)(B) proceedings in federal court. 74 F.3d at 369 n. 3. On remand, the district court analyzed the applicability of an affidavit pursuant to the Federal Rules of Evidence. *See Alexander v. INS*, No. Civ. 96–147–P–C, 1997 WL 97114, at *2–3 (D.Me. Feb.27, 1997). Federal courts have also applied the Federal Rules of Evidence in denaturalization proceedings. *See, e.g., United States v. Lileikis*, 929 F.Supp. 31, 38 (D.Mass.1996) (Stearns, J.).

■ This Court ruled that the Federal Rules of Evidence applied in the instant proceeding, consistent with the general principle that the Federal Rules of Evidence apply in district court but not in agency proceedings. Fed.R.Evid. 101, 1101; *see also New Dynamics Found. v. United States*, 70 Fed.Cl. 782, 797 (2006). Applying the Federal Rules of Evidence, this Court held that Mello's testimony was admissible pursuant to a hearsay exception. The parties agreed that Francelina was unavailable due to infirmity. Because Mello testified to Francelina's statements regarding personal and family history, his testimony was admissible pursuant to Rule 804(b)(4).

**C. Factual Findings**

■ Aldevino's principal argument against removal was that he has derivative citizenship because his mother is a U.S. citizen and resided in the United States a certain number of years prior to his birth. Derivative citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred. *Jordon v. Attorney General*, 424 F.3d 320, 328 (3d Cir.2005). At the time Aldevino was born, a person had derivative citizenship, if at the time of birth, he had a

parent who: (1) was a United States citizen; and (2) had been physically present in the United States "for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years." 8 U.S.C. § 1401(a) (1957).

The parties did not dispute that Francelina was born in the Azores in 1927 and moved to the United States on a permanent basis in 1962. Aldevino alleged, however, that Francelina first came to the United States in 1928 when she was one year old and returned to the Azores when she was seven years old. Aldevino further alleged that Francelina returned to the United States with her mother in 1941 when she was fourteen years old and stayed until 1947, when she was twenty years old. Suppl. Mem. [Doc. No. 5], at 9. If true, then Francelina was physically present in the United States for the requisite number of years for Aldevino to obtain derivative citizenship. The government disputed this account, apparently contending that Francelina arrived in the United States for the first time in 1962. Brief for Respondent [Doc. No. 6], at 11–12.

Aldevino relied principally on statements that Francelina made to immigration officials between 2003 and 2005 in support of her son's derivative citizenship. Francelina had testified on Aldevino's behalf that she was present in the United States between the ages of one and seven, and again between the ages of fourteen and twenty. A.R. 274–75. Aldevino also pointed to Mello's testimony that he heard many times as a young boy the story from his grandmother about her stays in the United States as a girl.

In response, the government relied on a visa application that Francelina signed when arriving in the United States in 1962. The application states that Francelina resided in the Azores between 1943 and 1962. A.R. 334. This statement contradicts Francelina's testimony to immigration officials forty years later that she was in the United States between 1941 and 1947.

Francelina testified in immigration proceedings that she did not fill out the visa application and signed only where she was told to sign. A.R. 288. Although the application states that Francelina can read and write in Portuguese, Francelina stated that she is illiterate. *Id.* The application otherwise correctly lists all information, including the date of Francelina's birth and the names of her husband and children.

This Court credited Francelina's statements that she came to the United States twice as a child. This Court noted, however, that Francelina's testimony in immigration court was often confused. She mistakenly stated that she was born in the United States and gave the wrong year for her daughter's birth. A.R. 267–73, 278–81. Given her inability to recall dates, this Court found that her testimony was not reliable with respect to the precise years that she was in the United States as a girl.

The Court further credited the visa application. Although the application incorrectly states that Francelina is literate, it is correct in all other respects. Further, the application was completed at a time when the stakes were not yet known. Aldevino could not explain why the person who completed the application would give incorrect information about where Francelina lived after turning sixteen.

■■■ On the basis of this record, the Court found that Francelina arrived in the United States in 1928 and returned to the Azores in 1934. The Court further found that Francelina returned with her mother to the United States in late 1941 or early 1942 when World War II had just begun

and work was plentiful. Finally, the Court found that Francelina returned to the Azores in 1943 and resided there until she moved to the United States in 1962. Francelina was in the United States for less than two years after turning fourteen and before giving birth to Aldevino. As this falls short of the five years required under the statute, this Court held that Aldevino had failed to show by a preponderance of the evidence that he had derivative citizenship.

## IV. CHILD CITIZENSHIP ACT

Aldevino made one last argument. He claimed that he is eligible for derivative citizenship under the Child Citizenship Act, Pub.L. No. 106–395, 114 Stat. 1631 (2000). Suppl. Mem. [Doc. No. 5], at 11. Under the statute, all children born outside the United States automatically obtain U.S. citizenship when: (1) at least one parent is a U.S. citizen; (2) the child is under the age of eighteen; and (3) the child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residency. 8 U.S.C. § 1431 (2005).

This Court lacks jurisdiction over the Child Citizenship Act claim because the Third Circuit transferred the case to this Court for the sole purpose of determining whether Francelina was physically present in the United States for the requisite number of years prior to Aldevino's birth. In any event, Aldevino would have had a tall mountain to climb on the merits. The statute became effective on February 27, 2001, well after Aldevino turned eighteen and ceased being in Francelina's custody. Every court to consider the issue has held that the statute does not have retroactive effect. *See, e.g., Nehme v. INS,* 252 F.3d 415, 431–33 (5th Cir.2001). The First Circuit has yet to rule definitively on

this point. *See Batista,* 270 F.3d at 15 n. 7 (assuming in passing that the Child Citizenship Act does not apply retroactively). Nonetheless, because this Court lacks jurisdiction, it does not have occasion to predict how the First Circuit would rule on this issue.

## V. CONCLUSION

An unfortunate byproduct of our nation's immigration laws is that they can sometimes tear families apart. This case is illustrative. Aldevino's two children are growing up without their father around. Aldevino took this risk when he trafficked in cocaine. While in prison for eight years, he saw his family only when they made the long drive to visit him in prison in the middle of Pennsylvania. A.R. 720–21. Any hopes that his family had of getting him back when he completed his sentence were dashed when he was deported.

Aldevino was removed even though he had lived in this country since he was five years old and his mother, wife, and two children are all citizens. Congress addressed an analogous situation when it enacted the Child Citizenship Act in 2000. Then, Congressman Gejdenson observed:

> There are tragic cases where children of U.S. parents, never naturalized because of inadvertence, are facing deportation because of a crime they have committed. While these children must face their punishment, to deport them to countries with which they have no contact, no ability to speak the language, and no family known to them is needlessly cruel. We must be sure that this never happens again.

146 Cong. Record H7778 (daily ed. Sept. 19, 2000). Aldevino has nonetheless fallen through the cracks and now lives in Portugal, apart from his family and the only country that he has ever really known.

This Court recognizes that this situation is heart-wrenching for Aldevino and his family. It is not, however, for this Court to fashion a remedy so that Aldevino may be reunited with his family. It is for Congress to legislate as it sees fit and for the executive branch to carry out the nation's immigration laws.