# United States Court of Appeals
## For the First Circuit

No. 08-2489

STEPHEN C. WALKER,

Petitioner,

v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya, and Howard,
Circuit Judges.

Gerald Karikari, for petitioner.
Julia J. Tyler, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, with whom
Tony West, Assistant Attorney General, Civil Division, and Barry J.
Pettinato, Assistant Director, was on brief for respondent.

December 11, 2009

**TORRUELLA, <u>Circuit Judge</u>.** When Petitioner Stephen C. Walker immigrated from Jamaica to the United States in 1992, his biological grandparents claimed him as their child. In 2005, Petitioner was convicted of drug-related crimes, after which the United States government initiated removal proceedings. At that time, Petitioner was in the custody of his naturalized biological mother. Petitioner now petitions for judicial review of the final order of the Board of Immigration Appeals ("BIA"), which affirmed the decision of an Immigration Judge ("IJ") denying Petitioner's claim of derivative U.S. citizenship and ordering Petitioner removed from the United States to Jamaica. Petitioner had argued before the BIA that removal proceedings should be terminated on the ground that he qualifies for derivative citizenship through his naturalized biological mother under the Child Citizenship Act of 2000 ("CCA"), Pub. L. No. 106-395, 114 Stat. 1631, which is codified at section 320 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1431. After careful consideration, we affirm the BIA's ruling.

# I. Background

## A. Facts[1]

In an affidavit executed on April 23, 2008, Petitioner stated that he was born in Jamaica, West Indies, on April 26, 1986, which is also reflected on his birth certificate. Petitioner also claimed to have always known Anne Marie Walker Wynter ("Wynter") as his birth mother but that he had never known his birth father, Everton Anderson ("Anderson").

In an affidavit executed on May 8, 2008, Petitioner's grandmother, Vashtie Eugenie Walker ("Vashtie"), stated that a midwife handled Walker's delivery. Vashtie also stated that she and her husband, Ernest Stephen Walker ("Ernest") (collectively

---

[1] In violation of the Federal Rules of Appellate Procedure, Petitioner's appellate brief does not include appropriate -- or any -- citations to the record. See Pet'r's Br. at 2-4; Fed. R. App. P. 28(a)(7) (explaining that an opposing brief must contain "a statement of facts relevant to the issues submitted for review with appropriate references to the record") (emphasis added). In not preparing this "statement of facts" section according to our rules, Petitioner's counsel has done a disservice to his client and made our work more difficult. As we have previously ruled:

> Where an appellant has provided defective briefs, the court in its discretion . . . may scrutinize the merits of the case insofar as the record permits, or may dismiss the appeal if the absence of a [record] thwarts intelligent review . . . . [In this case,] there is a sufficient record to reach the merits . . . and we choose to do so. Because, however, appellant has failed to provide a compliant statement of facts, we resolve any ambiguities against him.

Fryar v. Curtis, 485 F.3d 179, 182 n.1 (1st Cir. 2007) (internal quotation marks and citations omitted).

"the Walkers"), "adopted" Petitioner "shortly after his birth," and that the midwife, who reportedly informed Vashtie "that the procedure she followed was appropriate and absolutely legal," gave the Walkers a birth certificate to that effect. That birth certificate lists the Walkers as Petitioner's parents. Vashtie claimed that the reason she and Ernest adopted Petitioner

> was because shortly after [Petitioner] was conceived by [Wynter], the man who [Wynter] named as his father refused to acknowledge him. This was of course extremely humiliating for myself and my husband because we are baptized Christians and my husband was a Minister at the time. We did not want [Petitioner] to be bastardized and so we agreed to adopt him with the consent of his mother . . . Wynter, our daughter.

Just how consensual that adoption was, however, is a matter of contention. In an affidavit executed on April 17, 2008, Wynter states, "[s]hortly after [Petitioner] was born, my parents informed me that they adopted [Petitioner] and told me that I had no rights to [Petitioner] . . . ."

Petitioner states that the Walkers immigrated to the United States in 1988. On February 18, 1988, at the U.S. Embassy in Kingston, Jamaica, the Walkers listed Petitioner as their son on their visa applications.

On November 16, 1989, Vashtie filed a visa petition for Petitioner, claiming that he was the Walkers' son. The same day, Vashtie filed a visa petition for Wynter, which lists three of Wynter's children but omits Petitioner.

-4-

On March 9, 1992, Marcia Walker, Petitioner's maternal aunt, completed an immigrant visa application on Petitioner's behalf that identified the Walkers as his parents.  As a result, Petitioner himself immigrated to the United States (via Miami, Florida) as a purportedly lawful permanent resident ("LPR") on April 16, 1992.

On May 3, 1994, at the U.S. Embassy in Kingston, Wynter submitted an immigrant visa application, on which she listed four children but omitted Petitioner.  Wynter then immigrated to the United States four days later.

In 1998, the Walkers returned to Jamaica without having been naturalized in the United States.

On April 27, 2001, Wynter, in her Application for Naturalization, listed Petitioner as one of her six children. Wynter became a naturalized U.S. citizen on November 2, 2001.

On October 5, 2004, after Petitioner's initial immigrant visa expired, he successfully applied for a new visa, listing the Walkers as his parents.

### B.  Procedural History

We review the procedural history of this case, from the date of Petitioner's criminal conviction until his appeal to this court.

### 1. Petitioner's Criminal Conviction

On July 6, 2005, Petitioner pled guilty to five counts of cocaine distribution in Suffolk Superior Court in Boston, Massachusetts, resulting in a suspended sentence and probation. In 2006, Petitioner violated the terms of his probation and the state court imposed yet a further term of probation.

### 2. DHS's Removability Charge against Petitioner

On January 22, 2007, the U.S. Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, or Form I-862, placing him into removal proceedings. Three days later, the DHS charged Petitioner with being deportable pursuant to section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), for being an alien convicted of an aggravated felony as defined in section 101(a)(43)(B) of the INA, 8 U.S.C. § 1101(a)(43)(B).

On March 20, 2007, an IJ in Boston, Massachusetts, ordered Petitioner to file a written brief "on or before April 10th, 2007" with respect to the facts and the law regarding his claim that he was a U.S. citizen, particularly the claim that he had derived U.S. citizenship. The IJ warned Petitioner that he must make a written request before April 10, 2007 for any extension to that "call-up" date for the brief, and that any extension granted would "only be for a few days."

On April 24, 2007 (fourteen days after the stated deadline), Petitioner filed a brief in support of his Petition to

Review the removal proceedings pending against him and requested a Stay of Deportation. In that brief, Petitioner argued that he qualified for exemption from removal proceedings because he had derived U.S. national status through Wynter, his natural mother, who was a naturalized U.S. citizen, under section 320(a) of the INA, 8 U.S.C. § 1431(a).

### 3. Immigration Judge's First Decision

On May 1, 2007, the IJ issued an oral decision concerning Walker's removability. The IJ denied Petitioner's requests for a stay and continuation of proceedings and also rejected Petitioner's application for cancellation of removal under section 240A(a) of the INA. The IJ further ordered that Petitioner be removed from the United States to Jamaica based upon the charge of removability set forth in Petitioner's Notice to Appear. The IJ observed that Petitioner was not eligible for any other form of relief because he had not asserted such eligibility nor had he requested to apply for any other form of relief.

The IJ found that Petitioner abandoned his claim of derivative citizenship. The IJ noted that, although Petitioner ultimately filed his brief on the matter on April 24, 2007, Petitioner did not submit a brief on or before April 10, 2007, nor did he request a continuation or an extension of the call-up date to file that brief. In response to Petitioner's arguments about why his derivative citizenship claim should not be found to be

abandoned, the IJ stated that none of Petitioner's arguments constituted good cause because Petitioner had sufficient time since he was detained and brought before the IJ on January 30, 2007 to explore this case.

The IJ also responded to the merits of Petitioner's argument that he is not removable from the United States as one convicted of an aggravated felony. Petitioner argued that his conviction does not meet the definition of an aggravated felony as set forth in 8 U.S.C. § 1101(a)(43)(B) because he was not sentenced to imprisonment. The IJ responded that Petitioner's argument failed because the statute does not require a specific sentence. Petitioner further argued that he was not removable because he had been an LPR for more than seven years; he was the father of a U.S. citizen who suffers from a medical condition; and he intended to marry a U.S. citizen. The IJ responded that all of these arguments fail because Petitioner was convicted of an aggravated felony, which made him ineligible to apply for cancellation of removal under section 240A(a) of the INA, 8 U.S.C. § 1229b(a), which explicitly requires that in order for the Attorney General to consider cancellation of removal, the deportable alien must show that he has not been convicted of an aggravated felony. See 8 U.S.C. § 1229b(a)(3).

### 4. Petitioner's Application for Certificate of Citizenship

The same day that the IJ found Petitioner removable as charged, May 1, 2007, Petitioner filed an application, dated April 24, 2007 (the same day that Petitioner filed a brief in support of his Petition to Review the removal proceedings pending against him and requested a Stay of Deportation), for a Certificate of Citizenship, or Form N-600, with the U.S. Citizenship and Immigration Services ("USCIS") of the DHS. On the form, Petitioner claimed U.S. citizenship through a U.S. citizen parent (naming Wynter as his U.S. citizen mother) and that he had not been adopted.

On May 31, 2007, the USCIS denied Petitioner's application because, "under the nationality laws, a child, under the age of eighteen on February 27, 2001, may <u>not</u> automatically derive U.S. Citizenship through his biological mother who naturalized, where the child's maternity, viability of his lawful permanent resident status, and legal and physical custody have <u>not</u> been definitively established."

The USCIS observed that the Walkers "officially and under oath listed you as their child" when they immigrated to the United States. The USCIS further noted that, contrary to claims found in the rest of the USCIS records that antedate Petitioner's 2004 indictment and 2005 conviction, only one such record -- Wynter's

2001 naturalization application -- listed Wynter as Petitioner's mother.  Moreover, the USCIS observed:

> It is only now that we receive a concerted effort and explanation to establish that your listed parents were really your grandparents and your real mother is a naturalized citizen. You now argue that your grandparents effected an illegal (informal) "adoption" to which your mother acquiesced, despite the fact that no court or governmental requirements of any kind were complied with in Jamaica, Massachusetts, or any other jurisdiction . . . .

> Knowing a mid-wife in Jamaica, they conspired to falsely register themselves as your biological parents, despite the fact that your grandmother was then 53 years of age and had already had her ovaries and/or uterus removed in Jamaica for medical reasons shortly after the birth of her last actual child in 1963 . . . . Despite the efforts of your mother, and now of your counsel, [the Walkers] still explicitly maintain in an affidavit dated February 23, 2007, that they are your "natural parents" and only granted "custody" of you to your mother in 1998.

The USCIS found that Petitioner had failed to meet his burden of proof concerning section 320(a) of the INA, considering "[t]he pattern of deceit surrounding what you now assert was a false birth certificate and the complicated and intertwined residence/custody issues with your mother and grandparents."  The USCIS concluded that, because Petitioner did not possess "a viable, lawful permanent residence, we believe that you lack the fundamental statutory prerequisite for automatic derivative citizenship."

On July 2, 2007, Petitioner filed a notice of appeal with the USCIS's Administrative Appeals Office ("AAO") challenging the

-10-

USCIS's decision to deny Petitioner's application for Certificate of Citizenship. The AAO dismissed Petitioner's appeal.

### 5. BIA's First Decision

On May 29, 2007, Petitioner filed a timely appeal of the IJ's decision to the BIA contending that the IJ erred in finding that Petitioner abandoned his derivative citizenship claim. On appeal, Petitioner submitted the following new evidence to establish derivative citizenship: (1) an amended birth certificate dated June 1, 2007, indicating that Wynter, not Vashtie, was Petitioner's mother; (2) DNA results from July 19, 2007 comparing Petitioner and Wynter and concluding that, based on specimens taken from both of them on July 9, 2007, "[t]he relative chance of Maternity, assuming a 50% prior chance, is 99.9996% as compared to an untested, unrelated woman in the Black population"; and (3) the Form N-600 that Petitioner had filed on May 1, 2007.

On September 4, 2007, the BIA, citing the new evidence on appeal, remanded the case to the IJ for further proceedings.

### 6. DHS's Additional Removability Charge Against Petitioner

On March 26, 2008, the DHS filed an additional charge of admissibility/deportability, separate from the January 2007 charge that contended that Petitioner was deportable as an alien convicted of an aggravated felony. The new charge asserted that Petitioner was removable pursuant to section 237(a)(1)(A) of the INA, 8 U.S.C. § 1227(a)(1)(A), because, at the time of his entry, Petitioner was

-11-

inadmissible pursuant to section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who is not in possession of a valid unexpired immigrant visa.  The DHS specifically charged that Petitioner was admitted as the child of an LPR based upon a visa petition filed by Vashtie, in which Vashtie claimed to be Petitioner's parent but in fact was not.

### 7.  Immigration Judge's Second Decision

On May 13, 2008, in an oral decision, the IJ found that Petitioner had failed to meet his burden of proof in establishing that he had been lawfully admitted to the United States for permanent residence as required by section 320(a)(3) of the INA. Based upon the DHS's charges in January 2007 and March 2008, the IJ ordered that Petitioner be removed from the United States to Jamaica.  On June 12, 2008, Petitioner timely appealed the IJ's decision to the BIA.

### 8.  BIA's Second Decision

On October 27, 2008, the BIA dismissed Petitioner's appeal, affirming the IJ's denial of Petitioner's claim of derivative citizenship.  The BIA made two rulings.  First, the BIA held that the IJ correctly found that Petitioner could not meet the requirements of section 320(a)(3) of the INA to establish citizenship because his residence in the United States prior to the age of 18 was not pursuant to a lawful admission.  Second, the BIA held that the IJ correctly deemed that Petitioner had abandoned his

-12-

application for cancellation of removal because, at a hearing on May 25, 2008, Petitioner explicitly declined to pursue that argument, deciding instead to proceed only with his claim of derivative citizenship.

Petitioner filed a timely petition for judicial review of this BIA decision to this court.  In this proceeding, Petitioner argues that he qualifies for derivative citizenship under section 320(a) of the INA.  Petitioner bases his claim on two grounds: (1) at the time of his admission, he was eligible for an immigrant visa since he was the adopted child of an LPR, and (2) when he was admitted, he possessed such a valid, unexpired immigrant visa. Petitioner also argues that, if he is deemed removable, such a ruling would constitute a retroactive revocation of his permanent residence card without a formal proceeding, in violation of due process of law under the Fifth Amendment to the U.S. Constitution.

## II.  **Discussion**

### A.  **Standard / Scope of Review**

When, as here, the BIA issues its own opinion, we review the BIA's decision and not the IJ's.  Touch v. Holder, 568 F.3d 32, 37-38 (1st Cir. 2009).

Petitioner's claim that he was residing in the United States "pursuant to a lawful admission for permanent residence" for purposes of his derivative citizenship claim under the CCA raises a pure question of law.  "We review the BIA's legal conclusions de

-13-

novo, with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles."  Gailius v. INS, 147 F.3d 34, 43 (1st Cir. 1998) (citing Ipina v. INS, 868 F.2d 511, 513 (1st Cir. 1989)); see also Mejía-Orellana v. Gonzales, 502 F.3d 13, 16 (1st Cir. 2007) ("We accord Chevron deference to the BIA's interpretation." (citing Chevron, U.S.A., Inc. v. NRDC, 467 U.S. 837, 842-43 (1984))); Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005) ("Rulings of law engender de novo review.  Even in that realm, however, courts must defer to the BIA's reasonable interpretations of the statutes and regulations relating directly to immigration matters." (emphasis added and citations omitted)).

We also review de novo whether an immigration procedure comports with due process.  See Santana v. Holder, 566 F.3d 237, 240 (1st Cir. 2009) (citing Teng v. Mukasey, 516 F.3d 12, 17 (1st Cir. 2008)).

## B.  Petitioner's Alleged Derivative Citizenship

Petitioner may have waived his claim to derivative U.S. citizenship, as the IJ ruled in his May 1, 2007 decision.  However, consistent with our discretionary de novo review, we assert our discretion to relax the raise-or-waive rule and thus decide on the merits, as the BIA did in its October 27, 2008 decision.

The CCA provides, in pertinent part:

(a) A child born outside of the United States automatically becomes a citizen of the United

-14-

States when all of the following conditions have been fulfilled:

(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

(2) The child is under the age of eighteen years.

(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

(b) Subsection (a) shall apply to a child adopted by a United States citizen parent if the child satisfies the requirements applicable to adopted children under section 101(b)(1) [of the INA].

8 U.S.C. § 1431. Furthermore, "[t]o be eligible for citizenship under [the CCA], a person must establish that the [statutory] conditions have been met after February 26, 2001 . . . ." 8 C.F.R. § 320.2(a)(2001).

Section 101(b)(1) of the INA, concerning adoption, is codified at 8 U.S.C. § 1101(b)(1). This statute provides, in pertinent part:

(1) The term "child" means an unmarried person under twenty-one years of age who is --

. . .

a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years . . . Provided, That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act . . . .

8 U.S.C. § 1101(b)(1)(E)(i).

-15-

Because it is undisputed that Petitioner was born abroad (in Jamaica), he "is presumed to be an alien and bears the burden of establishing [his] claim to United States citizenship by a preponderance of credible evidence." Matter of Baires-Larios, 24 I. & N. Dec. 467, 468 (B.I.A. 2008) (citing Matter of Tijerina-Villarreal, 13 I. & N. Dec. 327, 330 (B.I.A. 1969)). Because citizenship confers "privileges and benefits," and, "once granted, cannot lightly be taken away," any "doubts [about Petitioner's citizenship] should be resolved in favor of the United States and against" him. Berenyi v. INS, 385 U.S. 630, 637 (1967) (citing United States v. Macintosh, 283 U.S. 605, 626 (1931)).

The Petitioner fulfills one -- the second -- of the requirements for derivative U.S. citizenship under the CCA: that requirement is undisputed based on the following four concessions by the government. First, the government acknowledges in its brief that Wynter, Petitioner's biological mother, was naturalized as a U.S. citizen on November 2, 2001. Resp't's Br. at 22. Second, the government also acknowledges that Petitioner was under eighteen years old on February 26, 2001, when the CCA became effective. Id. This fact establishes that Petitioner does satisfy the second prong of the CCA. Third, the government states that Petitioner was living in Wynter's legal and physical custody on February 26, 2001. Id. Fourth, as discussed in the next two sections, the government correctly states that Petitioner has not fulfilled the condition in

-16-

prong three of the CCA, that he was "residing in the United States" after the CCA became effective "pursuant to a lawful admission for permanent residence." See id. at 23; INA § 320(a)(3), 8 U.S.C. § 1431(a)(3).

### 1. Interpreting "lawful admission for permanent residence"

As used in the INA, "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20); see also 8 C.F.R. § 1.1(p) (same, and providing further that "[s]uch status terminates upon entry of a final administrative order of exclusion, deportation, or removal").

In its October 27, 2008 order, the BIA, in issuing a final administrative order for Petitioner's removal, held that the IJ correctly found that Petitioner was not lawfully admitted to the United States as a permanent resident because his LPR status was acquired through the fraud or misrepresentation of third parties, the Walkers. The BIA noted that its determination was guided by its decision in Matter of Koloamatangi, in which the BIA determined that an alien who had acquired LPR status through fraud was ineligible for cancellation of removal because he had never been lawfully admitted. 23 I. & N. Dec. 548 (B.I.A. 2003). But in Koloamatangi, the BIA based its ruling on reasoning beyond mere

-17-

fraud. In fact, the BIA considered "sound" observations from the Fifth and Ninth Circuits that "the term 'lawfully admitted for permanent residence' did not apply to aliens who had obtained their permanent resident status by fraud, or had otherwise not been entitled to it." Id. at 550 (emphasis added and citations omitted). In Koloamatangi, the BIA ultimately found that the "correct interpretation of the term 'lawfully admitted for permanent residence' is that an alien is deemed, ab initio, never to have obtained lawful permanent resident status once his original ineligibility therefor is determined in proceedings." Id. at 551.

In that 2008 order, the BIA further noted that the same reasoning must apply in Petitioner's case. The BIA asserted that "it does not matter that the [Petitioner] may have played no part in the fraud or misrepresentation which enabled him to acquire LPR status because no finding of fraud on his part is required to determine that the [Petitioner's] admission was not lawful." In re Walker, No. A043-219-583 (B.I.A. Oct. 27, 2008). As noted in Part II(A), we are required to afford some degree of deference to the BIA's interpretation in this matter.

Our own precedent supports this outcome. In Mejía-Orellana, we found that the BIA's interpretation of "lawfully admitted for permanent residence" was reasonable when it concluded that "an alien who has acquired his '[LPR] status' by fraud or misrepresentation has not been lawfully admitted and so is

ineligible for a cancellation of removal." 502 F.3d at 14, 16. We reasoned that "any other reading would encourage fraud and misrepresentation in the process of application for lawful permanent resident status." Id. at 16. We further noted, in citing case law from the Second, Fifth, Eighth, Ninth, and Eleventh Circuits, that "[o]ther courts have upheld this interpretation of the same phrase in different sections of the [INA]: The natural reading of 'lawful' connotes more than just procedural regularity; it suggests that the substance of an action complied with the governing law." Id. (internal quotation marks and citations omitted).

Petitioner argues in his brief that his lack of intent is crucial to this case. He contends that "[i]ntent is what the statute requires." Pet'r's Br. at 8. To support his argument, he cites 8 U.S.C. § 1182(a)(6)(C)(i), which states that "any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States . . . is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i) (emphasis added).[2] Petitioner also cites United States v. Dixon, which states that an act is done "willfully if done intentionally and deliberately and if it is not the result of innocent mistake,

_____

[2] Petitioner cites 8 U.S.C. § 182(a)(6)(C)(i), but it is clear from the context that Petitioner meant 8 U.S.C. § 1182(a)(6)(C)(i).

-19-

negligence or inadvertence."  536 F.2d 1388, 1397 (2d Cir. 1976) (internal quotation marks omitted).  Pet'r's Br. at 8.

However, as respondent correctly points out:

> Walker's argument that "intent" to deceive or defraud is required under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i) is of no moment because Walker was not charged under this provision . . . .  Rather, in addition to being charged as removable as an aggravated felon, he was charged with being inadmissible under INA § 212(a)(7)(A)(i)(I), because he did not possess a valid unexpired immigrant visa at the time of his entry to the United States, a provision which, by its very language, does not require intent to deceive.  8 U.S.C. § 1182(a)(7)(A)(i)(I).

Resp't's Br. at 26-27 n.13.

Petitioner also seeks to distinguish his case from Mejía-Orellana on the basis that Petitioner himself did not commit any wrongdoing and was a minor when he entered the United States. However, although Mejía-Orellana involved a party who committed fraud or misrepresentation himself (by failing to disclose his arrest on his application for adjustment of status), 502 F.3d at 14, the underlying policy concern is similar in this case.  If Petitioner was considered to have been lawfully admitted for permanent residence, then the fraud or misrepresentation of third parties applying on his behalf would be encouraged.

We thus conclude, based on our requisite deference to the BIA's interpretation and the rationale supporting our own precedent, that it is not determinative that Petitioner himself

-20-

intended to commit fraud in obtaining admission to the United States for permanent residence.

We are sympathetic to the fact, as Petitioner notes in his brief, that Petitioner "was a child when he first entered the United States and had no control over the actions of his grandparents; in addition, he did not intend to break any immigration laws nor obtain admission for permanent residence through fraudulent means." Pet'r's Br. at 8. However, statutory interpretation is, in the first instance, the prerogative of the agency charged with interpreting the statute -- in this immigration case, the BIA -- and the agency's interpretation in this case is reasonable. Accordingly, there is no error of law and we are compelled to affirm.

### 2. Petitioner's Claim of Derivative U.S. Citizenship

Petitioner's claim of derivative citizenship presents a Catch-22 for him. Petitioner cannot pick and choose his status to satisfy the CCA's cumulative requirements. As Respondent rightfully points out, Petitioner claims "to be his grandparents' child for one purpose [(being lawfully admitted into the United States as an LPR)], and his mother's child for others [(obtaining derivative U.S. citizenship)] . . . ." Resp't's Br. at 32, n.17.

Even then, however, Petitioner is inconsistent about whether he was ever actually adopted by his grandparents. On the one hand, Petitioner concedes that his "adoption" by the Walkers

"was not a legal process." Pet'r's Br. at 3. Not only does Petitioner make this concession in his brief, but he did so multiple times throughout the administrative proceedings: in testimony before the IJ; in his notice appealing the IJ's May 13, 2008 decision; in his brief in support of his application for derivative citizenship; and in his Form N-600 Application for Certificate of Citizenship. On the other hand, Petitioner claims in his brief that, because Vashtie "adopted" him or he was otherwise her "child," he held a viable LPR status in 1992. Pet'r's Br. at 4-6.

Even if Petitioner _was_ indeed lawfully adopted by the Walkers in 1985, then it is unclear how he would qualify for the first of the three requirements of the CCA, that "[a]t least one parent of the child is a citizen of the United States, whether by birth or naturalization." INA § 320(a)(1); 8 U.S.C. § 1431(a)(1). It is undisputed that the Walkers are not U.S. citizens. It has not been established that Petitioner's biological father, Anderson, is a U.S. citizen or, even if he is, that he qualifies as Petitioner's "parent" for the purposes of section 320(a)(1) of the INA. It has also not been established that Wynter, though incontrovertibly a U.S. citizen, qualifies as Petitioner's "parent" for the purposes of section 320(a)(1) of the INA.

If Petitioner _was not_ lawfully adopted by the Walkers, then, given the analysis above, Petitioner does not qualify for the

third of the three requirements of the CCA, that "[t]he child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." INA § 320(a)(3); 8 U.S.C. § 1431(a)(1).

Petitioner has thus failed to establish his claim to derivative U.S. citizenship by a preponderance of credible evidence and is not entitled to such citizenship.

## C. Due Process

Petitioner asserts in his brief that he will be deprived of due process of law under the Fifth Amendment of the U.S. Constitution if his permanent residence card is "revoked retroactively" without a formal proceeding. Pet'r's Br. at 4, 9-10. Without such a proceeding, Petitioner claims, the government cannot revoke Petitioner's green card or assert that he entered the United States illegally. Pet'r's Br. at 4. Petitioner claims that he had no notice and no reasonable opportunity to respond to the allegations that he lied on his application for lawful permanent residence. Pet'r's Br. at 10. To support his claim of a constitutional violation, Petitioner cites Peña-Muriel v. Gonzales, in which we held that the Fifth Amendment of the U.S. Constitution entitles aliens to due process of law in deportation proceedings. 489 F.3d 438, 444 (1st Cir. 2007) ("[D]ue process requires that the alien receive notice of the charges against him, and a fair

-23-

opportunity to be heard before an executive or administrative tribunal.").

Petitioner's argument fails for two reasons. First, the characterization that Petitioner's green card was "revoked retroactively" makes no sense if the card was not lawfully granted in the first place. See Wong v. INS, 474 F.2d 739, 741 (9th Cir. 1973) (affirming the BIA's determination that aliens' "admission on visas to which they were not entitled conferred no lawful status" upon them); De La Rosa v. DHS, 489 F.3d 551, 554 (2d Cir. 2007) ("[An alien] subsequently determined in an immigration proceeding to have originally been ineligible for . . . status [as an LPR] has not been lawfully admitted for permanent residence because the alien is deemed, ab initio, never to have obtained lawful permanent residence status." (internal quotation marks and citation omitted)).

The second reason why Petitioner's argument fails is because he received all of the process that he was due. The USCIS adjudicated Petitioner's application for a Certificate of Citizenship. The AAO adjudicated Petitioner's appeal from the denial of that application. The IJ heard Petitioner's case twice. The BIA twice reviewed the IJ's rulings.

We have found other such claims of denial of due process similarly baseless. In Mejía-Orellana, the alien claimed that his due process rights were violated because he had no notice or

reasonable opportunity to respond to the allegations that he lied on his application for lawful permanent residence.  502 F.3d at 17. We ruled that the alien's claim of denial of due process was "utterly without merit" because the alien "had three hearings in front of the IJ and submitted a memorandum in support of his application for a cancellation of removal after the argument that his [LPR] status was void ab initio first was raised."  Id.  Since Petitioner received at least as much due process as the alien in Mejía-Orellana, we similarly find that Petitioner's claimed deprivation of due process is "utterly without merit."

The petition for judicial review is denied.