# Matter of Bright Idada FALODUN, Respondent

*Decided June 2, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Unlike a Certificate of Naturalization, a certificate of citizenship does not confer United States citizenship but merely provides evidence that the applicant previously obtained citizenship status.

(2) The institution of judicial proceedings to revoke naturalization are not required to cancel a certificate of citizenship, which the Department of Homeland Security can cancel administratively upon a determination that an applicant is not entitled to the claimed citizenship status.

FOR RESPONDENT:  Janet Hinshaw-Thomas, Accredited Representative, Lansdowne, Pennsylvania

BEFORE:  Board Panel:  GRANT, MANN, and O'CONNOR, Board Members.

O'CONNOR, Board Member:

In a decision dated June 6, 2016, an Immigration Judge denied the respondent's motion to terminate his removal proceedings and ordered him removed after rejecting his claim to United States citizenship.  The respondent has appealed from that decision.  The appeal will be dismissed.  The request for oral argument is denied.  8 C.F.R. § 1003.1(e)(7) (2016).

The issue on appeal is whether the respondent has established his claim to United States citizenship and thus is not subject to removal proceedings.  We review this question of law de novo.  *See* 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent is a native and citizen of Nigeria who was born in Benin City, Nigeria, on June 30, 1981.  He obtained lawful permanent resident status in 1996 as the stepchild of a United States citizen who was married to the respondent's alleged adoptive father.  The respondent's claim to United States citizenship derives from the naturalization of his putative custodial adoptive father in 1995.  On February 17, 1998, the respondent was issued a Certificate of Citizenship (Form N-560).

In removal proceedings, evidence of foreign birth gives rise to a rebuttable presumption of alienage, shifting the burden to the respondent to come forward with evidence to substantiate his citizenship claim.  *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153, 164 (BIA 2001) (citing *Matter of Leyva*, 16 I&N Dec. 118, 119 (BIA 1977)); *Matter of Tijerina-Villarreal*,

13 I&N Dec. 327, 330 (BIA 1969). Assessing the respondent's claim to citizenship, the Immigration Judge noted that the evidence of record raises serious questions whether the respondent has ever qualified as a United States citizen. Specifically, the record includes an August 20, 2002, notice of intent to cancel the respondent's Certificate of Citizenship ("NOIC") issued by the former Immigration and Naturalization Service ("INS"), alleging that the certificate had been obtained by fraud. The NOIC was based on information obtained in connection with a Federal criminal investigation. This investigation revealed that the respondent's putative adoptive father was actually his biological brother. Although the respondent claimed that his biological father had died in 1983, records indicated that, as of 2002, he was alive and living in Nigeria. The NOIC further alleged that the respondent submitted a fraudulent adoption certificate.[1]

In his October 23, 2002, response to the NOIC, the respondent presented a letter from an attorney specifically denying each of the allegations in the NOIC. He also submitted a purported death certificate for the person the respondent alleged was his biological father. The death certificate was issued more than 8 months after this individual's death and just days before the respondent's response to the NOIC was due.

In a decision dated April 21, 2003, the District Director concluded that the evidence the respondent provided in response to the NOIC was insufficient to overcome the evidence supporting the cancellation of the Certificate of Citizenship. He determined that the Nigerian adoption decree submitted on the respondent's behalf was fraudulent and that he did not derive United States citizenship through his biological brother under former section 321(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a)(2) (1996), which was in effect when the respondent turned 18 years old. The District Director therefore cancelled the respondent's Certificate of Citizenship after concluding that it had been obtained by fraud. On March 29, 2004, the Administrative Appeals Office ("AAO") dismissed the respondent's appeal from the District Director's decision.[2]

---

[1] The respondent was convicted on February 14, 2003, in the United States District Court for the District of Minnesota, of the Federal offenses alleged in the notice to appear, which support the Immigration Judge's determination regarding the respondent's removability.

[2] Prior to the creation of the Department of Homeland Security, appeals from the cancellation of certificates of citizenship were within the jurisdiction of the Associate Commissioner for Examinations in the INS. 8 C.F.R. § 103.1(f)(3)(iii)(Q) (2002). The Secretary of Homeland Security now possesses this delegated authority, which has since been reserved. 8 C.F.R. § 103.1(a) (2011); Immigration Benefits Business Transformation, Increment I, 76 Fed. Reg. 53,764, 53,780 (Aug. 29, 2011). By regulation, the AAO has exclusive jurisdiction to consider an appeal of a decision to cancel a Certificate of Citizenship. *See* 8 C.F.R. §§ 103.3(a)(1)(ii), (iv), 342.8 (2016). Neither the Immigration

On appeal from the Immigration Judge's decision, the respondent argues that the cancellation of his Certificate of Citizenship did not affect his claim to United States citizenship status and that he was denied due process because the Immigration Judge did not defer to a Federal court regarding his citizenship claim. In support of this argument, he relies on the language of section 342 of the Act, 8 U.S.C. § 1453 (2012), and *Gorbach v. Reno*, 219 F.3d 1087 (9th Cir. 2000) (en banc), which enjoined administrative proceedings to revoke naturalization.[3]

The respondent claims he derived United States citizenship under former section 321(a) of the Act as the minor child of a custodial adoptive parent when that person became a naturalized United States citizen in 1995. The respondent's application for a certificate of citizenship was approved, but only in recognition of that derivative status. However, when the adoptive relationship underlying his derivative United States citizenship claim was found to be fraudulent, the respondent could no longer contend that he had a valid claim to United States citizenship on that basis. The District Director cancelled the improvidently issued Certificate of Citizenship pursuant to his statutory authority under section 342 of the Act. *See* 8 C.F.R. part 342 (outlining the process for cancelling a Certificate of Citizenship illegally or fraudulently obtained under the Act).

Both before the Immigration Judge and on appeal, the respondent appears to conflate the grant of United States citizenship through the naturalization process, which results in the issuance of a Certificate of Naturalization (Form N-550), with the approval of an Application for Certificate of Citizenship (Form N-600), which acknowledges that sufficient evidence has been presented to support an applicant's claim to have derived United States citizenship. However, these are distinct applications in their purpose and effect, as we explain below.

A person seeking United States citizenship through naturalization may file an Application for Naturalization (Form N-400) if he or she is 18 years old or older and meets certain requirements, including continuous residence and physical presence, good moral character, and legal status. *See* 8 C.F.R. § 316.2 (2016); *see also* 8 C.F.R. parts 334–335 (2016). If the naturalization application is approved and the applicant takes an oath of allegiance, a Certificate of Naturalization will be issued to document the grant of United States citizenship. *See* 8 C.F.R. parts 337–338 (2016).

---

Judges nor the Board have jurisdiction to consider the respondent's challenge to the AAO decision. *See* 8 C.F.R. § 1003.1(b).

[3] Section 342 of the Act provides statutory authority for the cancellation of certificates of citizenship. The portion of the statute on which the respondent relies states that the cancellation of a certificate of citizenship "shall affect only the document and not the citizenship status of the person in whose name the document was issued."

The respondent does not claim United States citizenship through naturalization. Instead, he was issued his Certificate of Citizenship under section 341 of the Act, 8 U.S.C. § 1452 (1996), based on his claim of derivative citizenship through the naturalization of his brother, who the respondent fraudulently claimed was his adoptive father. A certificate of citizenship only provides documentation of United States citizenship for persons who claim to have obtained that status derivatively. *See* 8 C.F.R. §§ 341.1, 341.2(c) (2016). It does not confer United States citizenship but only furnishes recognition and evidence that the applicant has previously obtained such status derivatively, that is, upon the naturalization of a parent or parents. *See* Section 341(a) of the Act. Thus, the issuance of a certificate of citizenship, like a United States passport, only serves as *indicia* of citizenship. It is not a *grant* of United States citizenship.

Because the respondent's United States citizenship claim was based on fraud, his Certificate of Citizenship is void. Once it was discovered that the respondent's Certificate of Citizenship had been issued in error, the District Director had an affirmative duty to institute administrative proceedings to cancel it. *See Friend v. Reno*, 172 F.3d 638, 647–48 (9th Cir. 1999); 8 C.F.R. § 342.1 (2016) ("If it shall appear to a district director that a person has illegally or fraudulently obtained or caused to be created a certificate . . . described in section 342 of the Act, a notice shall be served upon the person of intention to cancel the certificate . . . .").

The District Director had statutory authority to cancel a certificate of citizenship that was illegally or fraudulently obtained under section 342 of the Act, so his decision to cancel the respondent's Certificate of Citizenship is not ultra vires. In this regard, the respondent's reliance on the language of section 342, which provides that the cancellation of a certificate of citizenship shall not affect "the citizenship status of the person in whose name the document was issued," is inconsequential because he was never entitled to citizenship status. *Cf. Matter of Koloamatangi*, 23 I&N Dec. 548, 551 (BIA 2003) (holding that an alien who receives lawful permanent resident status by fraud "is deemed, ab initio, never to have obtained [such] status once his original ineligibility . . . is determined in proceedings").

Administrative proceedings to cancel a certificate of citizenship under section 342 of the Act, which provides statutory authority to cancel a certificate of citizenship that was illegally or fraudulently obtained, are different from denaturalization proceedings under section 340 of the Act. The main difference between cancellation and revocation proceedings is that cancellation only affects the document, not the person's underlying citizenship status.

A Certificate of Naturalization cannot be cancelled if it was issued to a person who lawfully filed an Application for Naturalization and proceeded

through the entire naturalization process to the oath of allegiance. In cases where the person obtained citizenship though the naturalization process, his or her citizenship status must first be revoked before the Certificate of Naturalization can be cancelled. *See* section 340 of the Act, 8 U.S.C. § 1451 (2012). Unlike other immigration proceedings that the United States Citizenship and Immigration Services handles in an administrative setting, revocation of naturalization, often referred to as "denaturalization," can only occur in Federal court. *See Gorbach*, 219 F.3d at 1093–94, 1099. A person's naturalization can be revoked either by a civil proceeding filed in Federal court pursuant to section 340(a) of the Act or by a criminal conviction under 18 U.S.C. § 1425 (2012), which results in the automatic revocation of naturalization under section 340(e) of the Act.

However, the provisions relating to the revocation of naturalization under section 340, including the cancellation of the Certificate of Naturalization under section 340(f), do not apply to persons, like the respondent, who have obtained citizenship status derivatively and whose Certificate of Citizenship was cancelled under section 342 of the Act. It is for this reason that the respondent's reliance on *Gorbach*, where the court enjoined administrative denaturalizations under section 340 of the Act, is misplaced.

The respondent has not shown that proceedings must be instituted to revoke citizenship under the particular circumstances of this case. We therefore find no support for his appellate argument that the Immigration Judge was required to defer to a Federal court for a decision on his claim to United States citizenship.

Because the respondent was born outside of the United States, he is presumptively an alien, and he has the burden to establish that he is a United States citizen for purposes of these removal proceedings. *See, e.g.*, *Matter of Rodriguez-Tejedor*, 23 I&N Dec. at 164. In order for the respondent to derive citizenship under former section 321(a) of the Act, his biological or adoptive father must himself have acquired United States citizenship. Since the respondent did not submit sufficient evidence that he has met this requirement, he cannot establish his claim to citizenship. As noted by the Immigration Judge, the respondent did not avail himself of the opportunity to present any additional testimony or other evidence in support of his claim to United States citizenship, relying instead on the evidence already in the record.

The respondent has not challenged the Immigration Judge's findings regarding his removability or requested any form of relief or protection from removal. We will therefore affirm the Immigration Judge's decision. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.